Froessel, J.
Defendant presently stands convicted, under count 1 of a superseding information, of violating subdivision 1 of section 1141 of the Penal Law. Her conviction rests on possession of allegedly obscene photographs, etc., of herself, and various writings, all obtained by the police from her home on March 29, 1960.
It appears that as the result of an advertisement in the January, 1958 issue of Follies Magazine, James Kenny, a postal inspector, using the name of William F. Connelly, began corresponding with defendant. Eventually he sent her a $10 money order, and, on March 28, 1960, received in return four black and white nude photographs of defendant, mailed from Lynbrook.
On March 29, 1960 Lieutenant William Schuchman, assigned to the District Attorney’s squad, in company with Inspector Kenny and Detectives Popeleski and Anderson, drove to defendant’s home, arriving shortly before 9:00 a.m. They had neither an arrest nor a search warrant. While the detectives remained in the automobile, Schuchman and Kenny knocked on the door, which was opened by defendant. They asked to talk to her, she consented, and they entered her living room. Kenny showed her the letter and photographs he had received under the name Connelly, and asked her if she recalled having mailed them. Defendant stated she did. Schuchman asked defendant if there *151 were any more of the photographs in the house, and was told it was none of his business. Schuchman then testified: ‘1 Again I asked her, ‘ Well, where is the rest of the pictures, do you have more? ’ She told me to get out of the house, and I said, ‘ No, I want to see some more of these pictures. Where do you keep this stuff? Where do you have it? ’ ” After again requesting Schuchman to leave, defendant ran upstairs to the second floor. Schuchman followed her, and in a room off a hallway he saw some pictures and some mimeographed pieces of paper listing sets of photographs. At this point Detective Popeleski entered the house, and observed Schuchman picking out pictures from a box in that second-floor room. Defendant told Schuchman to get out, that he had no right to go through her “ stuff ”.
Across the hall from the room Schuchman was searching, there was a locked room which defendant said was her mother’s sewing room; she would not open the door. After some discussion, she refused to accompany Schuchman to the District Attorney’s office. About 9:15 or 9:30 a.m. Schuchman and Kenny departed, taking with them photographs and other items. Popeleski and Anderson remained at the house to guard the evidence. Schuchman and Kenny went to Mineóla, and had a warrant of arrest issued charging defendant with “ possession of the pictures and the mailing in Lynbrook of the nude pictures ’ ’ sent to Kenny.
About 2:30 or 3:00 p.m., Detectives Sheridan and (fillings arrived at defendant’s house with the warrant and arrested defendant. At this time defendant unlocked the door of her mother’s sewing room, and the search which followed produced most of the evidence later introduced at trial. Defendant’s version of the search of her home on March 29 accorded substantially with the testimony of Schuchman and Popeleski.
Of the several contentions urged upon us by defendant, we consider only that relating to the illegal search and seizure, which we find dispositive of this appeal. As the foregoing recital of the relevant evidence clearly demonstrates, the search of defendant’s home was plainly illegal and the evidence thereby obtained would be inadmissible under Mapp v. Ohio (367 U. S. 643). Indeed, the District Attorney concedes that the search and seizure were unlawful, but urges that we are precluded from reviewing this question by reason of defendant’s failure to make objection at the trial.
*152 In People v. Loria (10 N Y 2d 368) we held that we would apply the rule of Mapp v. Ohio (supra) in our review of pending-appeals although the trials, having taken place before Mapp, were conducted according to the law as it then existed. The present case, like Loria, was tried before the Mapp decision was handed down, and was pending in the County Court after Mapp was decided, but that court, although mentioning Mapp, did not pass upon the search and seizure question there raised.
Unlike Loria, defendant here failed to object expressly on constitutional grounds to the admission of the evidence upon which she was convicted. However, defendant’s counsel did object generally, and definitely laid the foundation to establish the illegal search and seizure; for example, when People’s Exhibit 7, a group of photographs, was offered, defense counsel’s objection was overruled, and he was granted an exception. Exhibit 7 was then withdrawn and later reoffered as People’s Exhibit 9. Defendant’s counsel then examined Lieutenant Schuehman on the voir dire, in the course of which counsel inquired several times whether he had a “ search warrant ” or “ a warrant ” of “ arrest ” when he seized the photographs, and each time the witness answered in the negative. When counsel asked Schuehman “ under what law ” did he “ have any right in the house ’ ’ without ‘1 making an arrest and without a warrant ”, the prosecutor objected and the court sustained him. Exhibit 9 was then received in evidence over defendant’s objection.
While these objections were not specifically based on constitutional grounds, the defense clearly established that the evidence in question was procured without a search or arrest warrant, and thus, under the circumstances, contrary to law. There was then no decisional law which authorized him to go further, and, therefore, he did enough to preserve the issue for our review (see Code Crim. Pro., § 420-a).
Turning now to the facts and circumstances of the present search, it is clear that it does not fall within one of the classes considered reasonable under the Fourth Amendment. In People v. Loria (supra) we stated the rule to be that a search is reasonable if conducted pursuant to a lawful search warrant, by consent, or incident to a lawful arrest. When Lieutenant Schuehman commenced the search of defendant’s premises, he did not have *153 a search warrant, and, although defendant consented to his and Kenny’s entry upon her premises, she did not consent to the subsequent search—indeed, she protested most vigorously.
The search cannot be justified as incident to a lawful arrest, for it was commenced several hours before defendant, who was at all times present, was arrested. As we stated in Loria (supra, p. 373), quoting from United States v. Di Re (332 U. S. 581, 595), a search ‘ ‘1 is good or bad when it starts and does not change character from its success ’ ”. (See, also, Byars v. United States, 273 U. S. 28, 29.) When Schuchman and Kenny left defendant’s home and obtained a warrant for her arrest, it was too late to validate the prior unlawful search. Moreover, the arrest Avarrant, according to Schuchman’s testimony, was based in part upon pictures seized during the initial unlaAvful search, and found in the room Avith “ a lot of stuff ”. Thus he testified that they “went before Judge Pantano and had a warrant issued charging possession of the pictures and the mailing* in Lynbroolc of the nude pictures” (emphasis supplied). The subsequent arrest; based as it was, in part, upon an illegal seizure, cannot be the basis of a search incident to a lawful arrest (Johnson v. United States, 333 U. S. 10,16); the arrest “ must be validated without any resort to the fruits of the search ” (United States v. Walker, 246 F. 2d 519, 525; Lee v. United States, 232 F. 2d 354, 355). “ If, therefore, it is necessary to rely on the search to justify the arrest, the conclusion is inescapable that a search that cannot be justified by what it turns up cannot justify the arrest ” (People v. Brown, 45 Cal. 2d 640, 644).
In sum, Lieutenant Schuchman’s actions were clearly violative of defendant’s rights. When he folloAved defendant to the second floor and searched the room off the hallway, he had no warrant of arrest — no felony was involved (Code Grim. Pro., § 177) — and he thus acted without any authority in law. Even if he had probable cause, which means more than mere suspicion (Brinegar v. United States, 338 U. S. 160, 175), for believing that defendant’s house contained obscene photographs, etc., he would not have been justified in searching Avithout a Avarrant (People v. Loria, supra; Jones v. United States, 357 U. S. 493, 497, 498-499). The evidence obtained from defendant’s home was therefore inadmissible. Moreover, the officers may not *154 testify to what they observed during the illegal search (Williams v. United States, 263 F. 2d 487, 488-489; McGinnis v. United States, 227 F. 2d 598, 603).
Here, unlike Loria, there is no point in ordering a new trial, since there would be no admissible evidence on which a conviction under the first count could be based. The judgment should be reversed, the first count of the information dismissed, and defendant discharged.
Chief Judge Desmond and Judges Dye, Field, Van Vooehis, Burke and Foster concur.
Judgment reversed, etc.

 This was the subject of count 3 which was eventually dismissed.