**UNITED STATES of America ex rel. Charles C. CAMPBELL, Appellant,**

v.

**A. J. RUNDLE, Superintendent, State Correctional Institution at Philadelphia, Pennsylvania,**

**and**

**Daniel W. Shoemaker, District Attorney of York County, Pennsylvania.**

**No. 14440.**

United States Court of Appeals Third Circuit.

Argued Sept. 24, 1963.

Decided Jan. 27, 1964.

Martin Vinikoor, Philadelphia (Vinikoor, Fein, Criden and Johanson, Stanford Shmukler, Philadelphia, on the brief), for appellant.

Daniel W. Shoemaker, Dist. Atty., York (Earl R. Doll, Asst. Dist. Atty., York, on the brief), for appellees.

Before BIGGS, Chief Judge, and KALODNER and GANEY, Circuit Judges.

BIGGS, Chief Judge.

The relator, Campbell [1], was indicted by the Grand Jury of the Court of Quarter Sessions of York County, Pennsylvania, for wilfully and feloniously using a certain instrument and means unknown to the Grand Jury upon the bodies of three women with the intent to procure miscarriages. The pertinent Pennsylvania statute provides, 18 P.S. § 4718: "Whoever, with intent to procure the miscarriage of any woman, unlawfully administers to her any poison, drug or substance, or unlawfully uses any instrument, or other means, with the like intent, is guilty of felony, and upon conviction thereof, shall be sentenced to pay a fine not exceeding three thousand dollars ($3,000), or undergo imprisonment by separate or solitary confinement at labor not exceeding five (5) years, or

---

1. Campbell was indicted with two other persons. The cases of these individuals do not concern us.

both." Campbell was found guilty as charged and was sentenced to a term in prison which he is now serving.

The events complained of in the indictment occurred on November 21, 1958. On that day Robert Smith, a State Police officer, swore out a complaint for a search warrant. The complaint read as follows: "Before me, the subscriber, one of the Alderman, in and for * * * [York] County, personally came Robert Smith, Penna. State Police of the City of Harrisburg in said county, who upon his solemn oath according to law, saith that from information received which he believes to be true at the Township of Heidelberg in the County aforesaid, that there is just cause to suspect that articles and instruments to procure abortions are possessed, and he has just cause and probable cause to believe, and does believe in a one story concrete block ranch type building and located a short distance from Green's (Smith's) Houses, short distance from Township Road T319 and being in control of Carroll G. Harrison also known as Christopher Columbus Campbell, and also known as Charles C. Campbell.

"Affiant therefore prays that a search warrant may issue to a proper officer directing him to search said place, thing or things.

"All this is contrary to the act of the General Assembly in such case made and provided and against the peace and the dignity of the Commonwealth of Pennsylvania. [signed] Robert Smith. Sworn and subscribed to before me this 21st day of November, 1958. [signed] H. Gellard Fickes, Alderman."

On November 21, 1958 [2], a search warrant was issued in the following terms by Alderman Fickes: "To Any Pennsylvania State Policeman in Said County, Greetings: Whereas, information and complaint have this day been made to the undersigned authority, an Alderman in and for the City of York, County of York and within the Commonwealth of Pennsylvania, on the oath of Corporal [later Sergeant] Robert Smith, of the Pennsylvania State Police, Harrisburg, Pennsylvania, that there is just cause to suspect that articles and instruments to procure abortions are possessed in a place described as a one story concrete block ranch type building and located a short distance from an establishment known as Smith's Green Houses and also a short distance from Township Road Number T319, in Heidelberg Township, York County, Pennsylvania, and being rented by and in the control of Carroll G. Harrison, also known as Christopher Columbus Campbell, and also known as Charles C. Campbell.

"These are therefore to command you to make diligent search in the building here-to-fore described, any parcel thereto, out buildings and conveyances for the articles, devices or instruments to procure abortions and if you find same or any part thereof, that you secure same and bring the person or persons in whose custody you find same before our said Alderman or some other member of the Minor Judiciary to be duly examined concerning the premises and further be dealt with according to law. Witness our said Alderman in the City of York, County of York and within the Commonwealth of Pennsylvania, who hath here-un-to set his hand and seal this 21st day of November, 1958."

The last search warrant was executed about 6:30 P.M. on November 21, 1958, by searching the farm house or dwelling described in the warrant. Sergeant Robert Smith entered the premises with a key. He was followed by at least three other officers. A very large list of articles was seized which indicated that an abortion or abortions had been performed or were about to be performed. At least three women were present who were in the process of being aborted or awaiting the process of abortion. Among the articles seized were surgical instru-

2. There were two applications for search warrants and two search warrants issued. Officer Smith testified, however, that the search warrant which was issued last on November 21, 1958, was the one that was executed.

ments, drugs appropriate for use in abortion, hypodermic needles, surgical bandages, an examining chair, cash in large quantities in the personal possession of the relator, and a white cap, a surgeon's mask, a white coat, rubber gloves, and white trousers. The relator was wearing the clothing referred to at the time of the search. Many of the articles seized were introduced in evidence at the trial. It clearly appears from the record that the surgical instruments which had been seized were introduced in evidence at Campbell's trial as well as the other articles just referred to. Insofar as the record shows no motion was made prior to the trial to suppress this evidence. At the trial no direct effort was made by the relator's counsel to prevent the numerous seized articles from being introduced in evidence on the ground that the search warrant had not been properly issued or was not a lawful warrant. An objection to the introduction of the articles into evidence was made solely on the ground that Sergeant Smith was biased and prejudiced. This objection was overruled. Indeed, the relator's counsel stated he had no objection to the surgical instruments being introduced into evidence. The relator's counsel did, however, object to the introduction into evidence of many other exhibits, to certain photographs in particular which showed the articles seized as they were *in situ* at the scene of the search. These objections also were overruled. There was also put into the record at the trial a statement, the equivalent of a confession, made by the relator to a police officer. We will deal with the nature and sufficiency of the relator's objections at a later point in this opinion.

The relator did not testify on his own behalf. He was found guilty and was sentenced on May 15, 1961, to a correctional institution for a period of five years. The judgment of sentence was affirmed by the Superior Court of Pennsylvania on November 16, 1961, 196 Pa. Super. 380, 175 A.2d 324; rehearing was denied on December 11, 1961. The Supreme Court of Pennsylvania denied allocatur on February 13, 1962, and the Supreme Court of the United States denied certiorari on November 13, 1962. See 371 U.S. 901, 83 S.Ct. 203, 9 L.Ed. 2d 164. Rehearing was denied on January 7, 1963, 371 U.S. 959, 83 S.Ct. 498, 9 L.Ed.2d 507. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, was decided on June 19, 1961. Campbell then petitioned the court below for a writ of habeas corpus, attacking the search and seizure as unlawful because no probable cause was shown for the issuance of the search warrant and contending that therefore the evidence seized under it was inadmissible at his trial. The court below rejected this view, D.C., 216 F.Supp. 41 (1963), and the appeal at bar followed. Campbell makes no specific contention respecting the admissibility of his confession. Cf. the fruit-of-the-poisonous-tree doctrine in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

The issues presented by the case at bar are difficult to comprehend, to state, and to resolve. As we have said, the relator's counsel at his trial did not object to the search warrant on the ground that it was issued illegally but contented himself with the objection that the police officer who swore out the complaint was biased and prejudiced. This objection was a futile one for no evidence was adduced to support it and even if sufficient evidence had been introduced to show clearly bias and prejudice on the part of the officer that issue was irrelevant. But Judge Montgomery of the Superior Court of Pennsylvania pointed out in reviewing the relator's conviction, 175 A.2d at 328: "At the time of the trial and prior to the recent decision of the Supreme Court of the United States in Mapp v. Ohio * *, which prohibited state courts from admitting into evidence any matter which was obtained by an unlawful search and seizure, Pennsylvania had as its rule that *even though a search warrant was illegally issued, it did not affect the admissibility of evidence obtained under it. Consequently, when the court below ruled that the defense counsel could not cross-*

*examine on the question of probable cause or issuance of a search warrant, it correctly applied the existing law. [Campbell] admit[s] this, but claim[s] that in the light of the complete change in the law the lower court should be reversed and a new trial granted. This contention would be meritorious if illegality in obtaining the search warrant had been shown. However, there is nothing in the record to show illegality.* During the course of the trial, counsel for the defense, in his cross-examination of the police officer who obtained the warrant, *indicated that he was not attacking its legality but was merely attempting to show bias.* The officer indicated that the complaint was made on behalf of the owner of the premises. *The questions of counsel elicited no showing of illegality, or for that matter bias or prejudice, in the obtaining of the search warrant. Therefore, the change in the law effected by Mapp v. Ohio * * * is not applicable."* [3] (Emphasis supplied.)

The opinion of the Superior Court seems to contain a misunderstanding of the contents of the record before the state trial court. The Court of Quarter Sessions, through its presiding judge, as we read the record, did not rule that the defense counsel could not cross-examine on the question of probable cause of issuance of a search warrant. The Judge did not have to do so for Campbell's counsel did not raise the point. His objection, as the state trial court stated, was that Sergeant Smith was biased and prejudiced. The trial court correctly summed up the law of Pennsylvania, as it existed prior to Mapp, when it wrote that the Pennsylvania rule was that even though a search warrant is illegally issued that does not affect the admissibility of evidence obtained under it. In short, much of the evidence [4] upon which Campbell was convicted, procured under the search warrant, was under the Pennsylvania law admissible whether the warrant was valid or invalid. It may have been for this reason that Campbell's counsel did not object to the admissibility of this evidence on the ground that it had been obtained under a search warrant which is now alleged to be legally insufficient.

A careful study of the paragraph quoted from the opinion of the Superior Court, does, however, reveal a contrast in principles which appears to us to be irreconcilable. The Superior Court stated in its opinion that there was nothing in the record to show that the search warrant had been illegally obtained. Of course, there was nothing, for the relator's counsel offered no evidence of any illegality. It would have availed Campbell nothing if his counsel had offered

---

3. The Pennsylvania rule as it was prior to Mapp is well illustrated in a quotation from Commonwealth v. Dana, 43 Mass. (2 Metc.) 329 (1841), set out in Commonwealth v. Rubin, 82 Pa.Super. 315, 327 (1923), as follows: " '[I]f the search warrant were illegal, or if the officer * * * exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers [lottery tickets] seized in evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence the court can take no notice how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine the question': * * * *"

As indicated, lottery tickets were the papers involved in Commonwealth v.

Dana, quoted above, and these were contraband and their possession was illegal. As we shall endeavor to show at a later point in this opinion, the possession of "articles and instruments to procure abortions", viz., surgical instruments and medical·supplies, is not illegal. We have not been able to find any case directly in point and none has been cited to us as to seized articles, the possession of which is not illegal, but it should be borne in mind that the decision of the Superior Court of Pennsylvania and the refusal of the Supreme Court of Pennsylvania to grant allocatur established the law of the case at bar and set the status of the articles and the instruments seized under the search warrant.

4. In so stating, we do not refer to Campbell's confession.

such evidence, for at the time of the trial, Mapp v. Ohio not having been decided, the evidence procured by the search and seizure, no matter how illegal the search and seizure had been, still would have been admissible. We therefore are unable to grasp the logic of the conclusion expressed by the Superior Court in the final sentence of the paragraph quoted from its opinion, viz., "Therefore, the change in the law effected by Mapp v. Ohio (supra) is not applicable."

At the time Campbell's case was on review Mapp of course had been decided by the Supreme Court of the United States. This brings us to a discussion of two recent decisions by the Supreme Court of Pennsylvania. The first is Commonwealth v. Raymond, 412 Pa. 194, 194 A.2d 150 (1963), and Commonwealth ex rel. Wilson v. Rundle, 412 Pa. 109, 194 A.2d 143 (1963). The Raymond decision involved a direct appeal from a judgment of conviction in a Pennsylvania state court. The judgment of sentence was imposed on Raymond prior to Mapp. The Supreme Court of Pennsylvania held, 412 Pa. 200, 194 A.2d at 153 (1963), that where the issue of illegality of a search and seizure was raised on a direct appeal the rule of law of Mapp was applicable even though the case was tried prior to the decision in Mapp. There was no search warrant in Raymond. The seizure was made in the course of searching a room in the house of a woman whom Raymond occasionally visited. In a sense, the ruling of the Supreme Court of Pennsylvania on the retroactive effect of Mapp was dicta for as we·read the opinion in Raymond the determination of that issue was not strictly necessary for the adjudication..

In the second case to which we refer, viz., Commonwealth ex rel. Wilson v. Rundle, the Supreme Court of Pennsylvania handed down a decision on an appeal from a refusal of a lower court to grant a writ of habeas corpus. The opinion was handed down a few days after the Supreme Court's decision in Commonwealth v. Raymond. Wilson had been convicted of a felony murder and

had been sentenced to life imprisonment. One of the grounds raised in his petition for habeas corpus was that certain physical evidence received at the trial, United States currency, had been obtained by an unreasonable, viz., illegal, search and seizure. There was no search warrant. The currency was seized by police officers in a search of a hotel room in Las Vegas. The Supreme Court of Pennsylvania discussed three separate situations which might arise in connection with Mapp v. Ohio in connection with applications for habeas corpus, and specifically considered the interesting question of whether Mapp could or should be applied retroactively. In this connection the Supreme Court stated 412 Pa. pp. 116–118, 194 A.2d pp. 147–148: "Whether the Mapp rule is to be applied retrospectively and, if so, to what extent, the majority opinion in Mapp does not disclose. In large measure, therefore, in determining the impact of Mapp we must consider its basic purpose.

"The Court *could have* held that Mapp's rule of exclusion of evidence obtained through an unreasonable search and seizure would apply only *prospectively*, even as to Miss Mapp, especially since, as Mr. Justice Harlan in dissent noted, the rule of exclusion was not the principal issue decided by the state court, nor was it 'tendered by [Miss Mapp's] Jurisdictional Statement' nor briefed or argued by Miss Mapp's counsel before the Supreme Court. However, since it did apply the rule of exclusion to Miss Mapp's trial, to that extent the Court did apply Mapp retrospectively.

"Having applied the rule to Miss Mapp, it would seem only essentially fair and logical that the rule be applied retrospectively in two other situations: (a) to *all* cases where the allegedly unconstitutional search and seizure took place *prior* to Mapp but the motion to suppress the evidence was not made or the trial did not take place until *after* [1962] Mapp (Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; Commonwealth v. Cockfield, 411 Pa. 71, footnote p. 74, 190 A.2d 898, p. 900); (b) to *all* cases where

not only the search and seizure took place *prior* to Mapp but where the conviction and the judgment of sentence had not become final at the time Mapp was decided (People v. Loria, 10 N.Y.2d 368, 223 N.Y.S.2d 462, 179 N.E.2d 478; People v. O'Neill, 11 N.Y.2d 148, 227 N.Y.S.2d 416, 182 N.E.2d 95; State v. Smith, 37 N.J. 481, 181 A.2d 761; State v. Valentin, 36 N.J. 41, 174 A.2d 737; Commonwealth v. Spofford, 343 Mass. 703, 180 N.E.2d 673).

"A third situation—illustrated by the case at bar—is where the conviction and judgment of sentence became final *prior* to Mapp and *after* Mapp the conviction and judgment of sentence are collaterally attacked through habeas corpus in a state court. In considering Mapp's applicability to this situation, it is essential that we bear in mind what the U.S. Supreme Court said in 1949 in Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 1364, 93 L.Ed. 1782: 'We hold, therefore, that *in a prosecution in a State court for a State crime the Fourteenth Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure.*' (Emphasis supplied). In this third situation, the courts in a vast majority of the states, including Pennsylvania, in reliance upon Wolf, in criminal trials followed the non-exclusionary rule which, as Wolf clearly indicated, was not then constitutionally inhibited. All parties to Wilson's trial, as in most pre-Mapp trials, placed full reliance on Wolf and such reliance certainly militates against a construction of the effect of Mapp which would set aside a trial conducted in full compliance with that which was, at the time, the law of the land.

"In analyzing the applicability of Mapp to this third situation, we must understand the basic purpose behind the mandate of the Court in Mapp. In Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669, referring to the 'basic postulate' of the ex-

clusionary rule, Mr. Justice Stewart said: 'The rule is calculated to *prevent*, not to *repair*. Its purpose is to deter— to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.' (Emphasis supplied) The efficacy of this exclusionary rule in support of the constitutional right lies in the sanction which it imposes; if police officials, in conducting searches and seizures, do so in a constitutionally illegal manner, their official lawlessness is penalized by the refusal of the court to permit the evidence obtained ,from, or the 'fruits of', such illegally conducted searches and seizures to be used against the prisoner." The Court, of course, said more than this but we will discuss the import of its decision in the light of the circumstances at bar later in this opinion.

We point out that in the case at bar Campbell, the relator, made no application to any Pennsylvania state tribunal for a writ of habeas corpus prior to the exhaustion of his remedies on appeal and has made none since that time.

The relator's brief in this court states: "Even though the case was tried prior to the decision * * * [in] Mapp v. Ohio * * *, defense counsel attempted to cross-examine the State Police officer upon whose complaint the search warrant had been issued, to determine whether there was probable cause for issuance of the warrant." This statement as we have seen, is, to put it mildly, inaccurate [5] for Campbell's counsel at his trial did not attempt to cross-examine Sergeant Smith as to whether or not there was probable cause for the issuance of the search warrant but proceeded to cross-examine him only as to whether Smith had proceeded with bias and prejudice. The brief goes on to state, that "thereafter, at every stage of the proceedings, appellant [the relator]. persisted in his contention that the Mapp case rendered the conviction invalid.",

5. In view of the palpable inaccuracy of counsel's statement we will adopt the unusual course of ordering it stricken from the brief, and we take this occasion to inform the counsel that such an error should not be committed in the future.

and that the "appellant was unable at any stage of the state appellate proceedings to develop facts concerning the illegality of the issuance or execution of the warrant." The relator did not put into the record in the court below any evidence which would tend to show what the Superior Court or the Supreme Court of Pennsylvania had before them in respect to the issuance of the search warrant or in respect to the search warrant itself beyond that which was contained in the record made before the Court of Quarter Sessions. We cannot accept counsel's statements as evidence of what occurred in another court. It does appear, however, from the opinion of the Superior Court that Mapp v. Ohio was called to the attention of that court and that counsel for Campbell urged that the evidence seized under the search warrant was inadmissible under Mapp. We note also that according to the petition for habeas corpus filed in the court below the search warrant was not included in the evidence of the trial but was introduced in the case by the Commonwealth when its brief was filed in the Supreme Court of the United States.[6]

But whether the relator's counsel at his trial made an effort to show lack of probable cause for the issuance of the warrant or did not do so, as we view the case, is immaterial for, as the law of Pennsylvania stood at the time of Campbell's trial, the articles seized under the search warrant, whether the search warrant was good or bad on its face and whether it was issued on a complaint based on probable cause or not, were admissible. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), had held that in a federal prosecution the Fourth Amendment barred the use of evidence procured by an illegal search and seizure by federal officers but the Supreme Court of the United States ruled also that articles unlawfully seized by local police officers, acting on their own account, were admissible in evidence. This was in 1914. In 1949, Wolf v. Colorado, supra, was decided. This decision concerned a prosecution in a state court for a state crime. Evidence was admitted at the trial which had been obtained by an illegal search and seizure and which would have been inadmissible in a federal court. Nonetheless the Supreme Court, while discussing the application of the Fourth Amendment through the Fourteenth Amendment on state action, adhered to the Weeks exclusionary rule. We can perceive no valid reason why relator's counsel could be expected to anticipate that the Supreme Court of the United States in 1961 would enunciate the rule of Mapp v. Ohio. It follows that the position taken by the Superior Court of Pennsylvania and adhered to by the Supreme Court of the Commonwealth that the relator had not properly laid the grounds to attack the admissibility of the evidence seized under the search warrant in the case at bar, as set out in the Superior Court opinion quoted herein, seems untenable. The Superior Court and the Supreme Court of Pennsylvania, under the decision in Commonwealth v. Raymond, supra, had the power to remand the case to the trial court to correct what was an obvious error of law. The appeal was a direct one. Relief was not granted the relator though, in our view, it was available and warranted under the circumstances.

But this by no means disposes of the issues presented by the case at bar. Section 2254, Title 28, U.S.C., bars the granting of a writ of habeas corpus by a federal court if a remedy is available in a state court proceeding. We must now inquire into this phase of the case. The relator has not sought relief in the Pennsylvania state courts by way of an application for habeas corpus on the basis of the evidence set out in the present record made in the court below on the issue of probable cause. In so stating, we de-

6. See para. "5.A(4)" of the petition for habeas corpus.

The relator did not introduce into evidence any of the briefs of the parties in the Pennsylvania state courts or in the Supreme Court of the United States.

sire to point out that in the court below the relator has pitched his case solely on the issue of lack of probable cause. The issue of insufficiency of the complaint and of the search warrant itself on their respective faces was not specifically raised in the court below or in this court until we raised it *sua sponte*. That particular aspect of the case was then briefed by the parties by direction of this court. Under our Rule 24(2) (b), this court, except under unusual circumstances, will not consider a point not set forth or raised by the statement of questions involved. Ordinarily also this court will not pass on a specific issue not raised by one of the parties in the court below. See United States v. Ivy Hall Apartments, Inc., 310 F.2d 5, 10 (3 Cir. 1962), but in this instance deficiencies appearing on the face of the complaint and on the face of the warrant lurk in the issue of probable cause itself and it is difficult, if not impossible, to consider whether or not the warrant was issued with or without probable cause without examining all of the relevant circumstances including deficiencies appearing on the face of the complaint and on the face of the warrant. Consequently we shall consider these deficiencies along with all other circumstances which were brought specifically on the record in the court below.

We can find no decision by a Pennsylvania state tribunal, and none has been cited to us, prior to Mapp v. Ohio or after which is strictly in point on the issues presented by the case at bar. Two recent decisions of Quarter Sessions Courts of the Commonwealth of Pennsylvania are helpful. These decisions show that the law of Pennsylvania as to probable cause as the basis for the issuance of a search warrant, corresponds to and is approximately the same as was the general federal law as it existed in 1933 at the time of the decision in Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159, and as it existed in the law of some of the states prior to Mapp v. Ohio.

The first case is Commonwealth v. Patrone, an opinion of the Quarter Sessions Court of Philadelphia County, decided on March 14, 1962, 27 Pa.Dist. & Co.R.2d 343. Patrone had been convicted of the offense of conducting an illegal lottery, was convicted and moved in arrest of judgment. Patrone had moved for suppression of the alleged illegal paraphernalia on the ground that the search and seizure warrant had not been issued upon probable cause within the meaning of the cases interpreting the Fourth Amendment of the Constitution of the United States. Patrone's motion was refused and it was clear that had the motion been granted the Commonwealth could not have sustained its case against him. The case came on for trial on December 1, 1961, and, as we have said, Mapp v. Ohio was decided by the Supreme Court on June 19, 1961. We cannot surmise why the Court did not apply Mapp v. Ohio prior to the trial and a motion to suppress the evidence, but it is clear that when it did apply Mapp it granted the motion in arrest of judgment and held that the search warrant was not issued upon probable cause. In this case the police officer swearing out the warrant stated that "from surveillance and information I have real cause to believe and I do believe that this property is being used illegally * * * " The property seized was paraphernalia of a kind ordinarily used by numbers writers. The Court of Quarter Sessions cited federal decisions only, and, of course, the Fourth Amendment. The court in fact relied largely on Nathanson v. United States, supra.

In Commonwealth v. Rehmeyer, decided on December 10, 1962, by the Court of Quarter Sessions of York County, 29 Pa. Dist. & Co.2d 635, the defendants were charged with participating in an obscene and indecent dramatic or theatrical exhibition in violation of 18 P.S. § 4528, and filed a joint motion to suppress the evidence and quash the information. The Court held the search warrant invalid on the ground of lack of probable cause and suppressed the evidence. The ground on which relief was granted was that no crime was being committed when the search warrant was issued and that

even the complaint sounded in the future tense. The court cited general law, in particular 79 C.J.S. Searches and Seizures § 74, and decisions of the Supreme Court of Maine, of Missouri, of the Court of Appeals of the District of Columbia Circuit, and an opinion of the Oklahoma Court of Criminal Appeals, but no decision by a Pennsylavnia state court.

The opinions of these two competent tribunals of Pennsylvania indicate that there is no decision by the Pennsylvania state tribunals which would be greatly helpful in resolving the issues which are before us in the case at bar, but that general law of the states and of the nation should be looked to when the old Pennsylvania rule of admissibility is eliminated as it now has been. The contents of Article 1, Section 8 of the Constitution of Pennsylvania, P.S.Const., are substantially similar to the provisions of the Fourth Amendment and demonstrate a fundamental intention by the framers of the Constitution of Pennsylvania to protect the people of Pennsylvania from unreasonable searches and seizures to the same extent and in the same way as does the Fourth Amendment presently under Mapp.

For the reasons set out hereinafter we think the court below was without jurisdiction to decide the issues presented to it on the merits, but we cannot be sure of this in view of the present not completely settled state of the law of Pennsylvania. Because of this we conclude that we should pass upon the merits of the controversy which was before the court below to the end that the reviewing court may be aware of what we think respecting the merits of the controversy. We conclude that the court below was in error in concluding that probable cause was shown for the issuance of the search warrant. We conclude also that the warrant and the complaint are insufficient on their respective faces.

■■ It will be noted that it was not charged in the complaint, executed by Sergeant Smith, that any crime had been committed, was being committed, or was about to be committed, in Pennsylvania or elsewhere. The complaint merely stated that there is "just cause to suspect that articles and instruments to procure abortions are possessed," and that the affiant "has just cause and probable cause to believe [such instruments are] in a one story, concrete block, ranch type building * * *" located on certain premises. If we are correct in our conclusion that the law of Pennsylvania relating to admissibility of seized evidence, *sans* the old Pennsylvania admissibility rule that permitted evidence illegally seized to be available for prosecution, would now be the same as was the law applicable in a federal prosecution at the time of the decision of the Supreme Court of the United States in Nathanson v. United States in 1933, and as it is set out in the decisions of the various courts cited with approval as noted in Commonwealth v. Rehmeyer, supra, we must conclude that mere "suspicion" is not enough even if there be "just cause" for being suspicious. It is required, we believe, that the affiant making the complaint shall state the grounds or the facts on which his belief is based, even though no source of the grounds or the facts must be set forth. Those grounds or the facts must be legally cognizable. Moreover, the facts or the grounds alleged must relate to an existing crime. As was said in State v. Miller, 329 Mo. 855, 46 S.W.2d 541 (1932), quoted with approval in Rehmeyer: "The Constitution and the statutes enacted pursuant thereto necessarily contemplate that the facts warranting the conclusion of probable cause must exist at the time of such judicial finding, not that they will or may come into existence thereafter.", and further, "A search warrant cannot legally be issued upon a showing, not that the law has been or is being violated, but only that it may or probably will be violated at a time, near or remote, in the future." In the case at bar, although the facts as developed at the trial demonstrated that the law actually was about to be violated by Campbell, there was no showing in the complaint to such effect. The Court in Rehmeyer also quoted with approval

from the Oklahoma case of Simmons v. State of Oklahoma, Okl.Cr., 286 P.2d 296, 298 (1955), as follows: "Warrants are directed to existing violations of the law and not to violations which may come into existence in the future." The State Police seem to have proceeded on the assumption that the possession of articles and instruments to procure an abortion was a crime under Pennsylvania law. This is not the law. It is possible that Sergeant Smith was confusing the possession of such articles or instruments with the unlawful possession of intoxicating liquors or, conceivably, such contraband as stolen property but even so his position would be extremely doubtful. In any event, the affidavit is so vague and indefinite in its terms as to fall for this reason, if for no other.

■ Moreover, as also appears from the Rehmeyer opinion, quoting with approval from Mitchell v. United States, 103 U.S.App.D.C. 341, 258 F.2d 435, 436–437 (D.C.Cir. 1958), concurring opinion of Bazelon, J.: "A search warrant is based upon a judicial determination of the *present existence of justifying grounds*—i. e., at the time of the issuance of the warrant." Not even by the interpolation of words or phrases can the complaint be held to assert facts upon which a judicial determination of the present existence of justifying grounds—i. e., at the time of the issuance of the warrant—can be based. The law of Pennsylvania at the critical period indicated in this opinion would, we believe, be in accord with the statement in Wharton's Criminal Procedure, Vol. 4, Section 1541, pp. 160–161: "If the apparent facts set out in an affidavit for a search warrant are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a search warrant.", citing Dumbra v. United States, 268 U.S. 435, 439, 45 S.Ct. 546, 69 L.Ed. 1032 (1925), which cites Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543 (1925). And also at p. 160: "It has been said that probable cause which

will justify the issuance of a search warrant is less than certainty or proof, but more than suspicion or possibility, the test being whether the allegations of the supporting affidavit warrant a prudent and cautious man in believing that the alleged offense has been committed." In the case at bar the affidavit was plainly insufficient. The existence of probable cause was not demonstrated by the affidavit.

■ The search warrant was equally defective. It does not state any crime, as will appear from an examination of it. Its terms follow, almost *in haec verba*, the language of the complaint. We believe that its insufficiency need not be dilated upon here. If it be valid, any house may be searched, without the allegation of a crime, committed or about to be committed, and the Fourth Amendment will indeed be set at nought. It must be borne in mind that it is not asserted here and cannot be asserted successfully that the seizures were incidental to an arrest. The house was entered under the authority of the search warrant, albeit a key was used. Without the search warrant it appears that entry to the house would not have been made.

■ One additional question remains to be discussed on this aspect of the case. Would the court below and would this court be justified in applying the doctrine of Mapp v. Ohio retroactively under the circumstances at bar? We conclude that the answer must be in the affirmative. First, as was pointed out by Mr. Justice Jones in Commonwealth ex rel. Wilson v. Rundle, the Supreme Court itself granted relief to Miss Mapp retroactively. Second, we need go no further in the instant case than the Supreme Court of Pennsylvania went in substance and in effect in Wilson, supra, for, as was pointed out in that case, the appeal processes had not been completed when Mapp v. Ohio was decided just as they had not been completed in Campbell's case in the Pennsylvania state tribunals when Mapp was decided. We need go no further in the instant case than to hold that it was

the intention of the Supreme Court of the United States to make the principle of Mapp v. Ohio applicable as a basis for granting habeas corpus in federal courts in cases where the appeal processes had not been completed in state tribunals when Mapp was decided. The boundary lines laid down by Mr. Justice Jones are clear and logical ones insofar as they go. See and compare "Mapp v. Ohio", 110 Pa. L.Rev. 650. We conclude that the Mapp doctrine should be applied here to the extent indicated but this does not mean that in other circumstances, not presently before us, the boundary might not be extendable and extended. Concerning this we presently need express no opinion, and if the court below had jurisdiction we would direct it to issue a writ of habeas corpus to the relator.

█ But in our opinion, as we have indicated, the court below was without jurisdiction to entertain the suit because of the provisions of Section 2254, Title 28, U.S.C., which provide that a federal court shall not grant the writ of habeas corpus unless it appears that the applicant has exhausted the remedies available in the courts of the State, and that an applicant shall not be deemed to have exhausted the remedies available in the courts of the State within the meaning of Section 2254 if he has the right under the law of the State to raise, by any available procedure, the question presented. We think it is clear under the decision of the Supreme Court of Pennsylvania in Wilson, whether or not we have interpreted it with precise accuracy, that under the second example cited by Mr. Justice Jones, 412 Pa. 109, 117, 194 A.2d 143, 147, quoted above, relief would be available retroactively to Campbell if he applied to the proper Pennsylvania State court for a writ of habeas corpus. As we have stated repeatedly, the appeal in his case was still pending when Mapp v. Ohio was decided on June 19, 1961.

While in our view the Superior Court and the Supreme Court of Pennsylvania could and should have granted him relief on that appeal, albeit by way of remand for a new trial, it can be asserted perhaps with some plausibility, that the issue of probable cause was not clearly before the Superior Court on the record presented, and the deficiencies appearing in the complaint and on the face of the warrant have not been presented to any Pennsylvania tribunal. But if on application for a writ of habeas corpus to a Pennsylvania court, a proper record is made, we may entertain no doubt that the relator's cause would be cognizable and that relief might be granted under it. In short we conclude that Campbell has not exhausted available state remedies and that therefore his suit in the court below was barred by Section 2254. See the opinions in United States ex rel. Wilkins v. Banmiller, 325 F.2d 514, and 518, (3 Cir. 1963).

For the reasons stated the judgment of the court will be affirmed.

KALODNER, Circuit Judge (concurring).

I agree that the relator has failed to exhaust presently available remedies in the Pennsylvania courts and that accordingly the District Court was without jurisdiction to grant his petition for a writ of habeas corpus. I would affirm the District Court's judgment denying habeas corpus relief for that reason.

In my view the consideration given to other questions raised by the relator on this appeal was not critical, nor necessary, to the resolution of the issue whether the relator has failed to exhaust his presently available state remedies. The teaching of Lawlor v. National Screen Service, 352 U.S. 992, 77 S.Ct. 526, 1 L. Ed.2d 540 (1957) is that we should confine our discussion to the dispositive issue or issues presented by an appeal.