UNITED STATES of America ex rel.
Jacob MOLINAS, Petitioner-
Appellant,

v.

Vincent R. MANCUSI (successor to Al-
bert J. Meyer), Warden of Attica State
Prison, Attica, New York, Respondent-
Appellee.

No. 202, Docket 30554.

United States Court of Appeals
Second Circuit.

Argued Nov. 28, 1966.

Decided Jan. 5, 1967.

Thomas R. Newman, New York City, for petitioner-appellant.

Michael H. Rauch, Asst. Atty. Gen. of New York (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.

Before FRIENDLY, SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Jacob Molinas appeals from an order of the United States District Court for the Western District of New York, Harold P. Burke, Chief Judge, which denied his application for a writ of habeas corpus. Appellant is currently serving a seven to twelve and one-half year sentence in the Attica State Prison after conviction in the Supreme Court of the State of New York for New York County for conspiracy, bribery and attempted subornation of perjury. His petition alleged that the admission of a certain tape recording in his trial violated his Fourth, Fifth and Sixth Amendment rights and that a four and one-half week adjourn-

ment of his trial because of illness of the judge after five weeks of trial denied him due process as guaranteed by the Fourteenth Amendment. Finding no merit in appellant's appeal, we affirm the denial of the writ.

From 1957 to 1961, Molinas, a former college and professional basketball player and a member of the New York Bar, conspired with three associates and college players to control the scores of intercollegiate basketball games across the country. One of his co-conspirators was Dennis William Reed, a college player who had accepted bribes. In March of 1961 Molinas telephoned Reed that something was brewing but not to worry. After telephoning Reed in May 1961 Molinas went to Ohio to talk with Reed, told him of a grand jury investigation and advised him how to lie to the grand jury if called. That summer Molinas again visited Reed, then at summer school in Ohio, recommended that Reed retain Molinas as counsel and dictated a letter which Reed wrote and gave to Molinas asking Molinas to act as Reed's counsel. After a New York investigator interviewed Reed in Ohio, Reed telephoned Molinas that Reed was coming to New York to testify before the grand jury. Molinas met Reed, and had him sign another letter retaining Molinas as counsel and a paper purporting to exculpate Molinas. Molinas accompanied Reed to the District Attorney's office and to a court appearance where a judge ruled that it would be unethical for Molinas to represent Reed. Thereafter, although initially refusing to do so, Reed agreed to co-operate with the authorities. After receiving a grant of immunity, he made an appointment to see Molinas and subsequently went to the latter's office equipped with a concealed tape recorder. Purporting to seek legal advice, Reed elicited statements from Molinas about the conspiracy and the bribery, and during this session appellant attempted to suborn Reed's testimony before the grand jury. At Molinas' trial Reed related the substance of these statements; corroboration of his accomplice testimony which is necessitated by N.Y.Code of Crim.P.

§ 399 was effected by playing the tape recording.

■ The government contends that appellant is barred from raising his Fourth Amendment claim because it was not passed on by the New York courts. At trial, defense counsel objected that admission of the tape recording "would constitute a violation of the defendant's constitutional rights under the United States Constitution." This broad phrasing adequately preserved appellant's rights under New York law. See People v. O'Neill, 11 N.Y.2d 148, 227 N.Y.S.2d 416, 182 N.E.2d 95 (1962). However, on appeal to the Appellate Division, on application for leave to appeal to the Court of Appeals, on reargument of that application and on motion to reargue in the Appellate Division, appellant did not present his Fourth Amendment claim. It was first specifically asserted in his petition for certiorari to the United States Supreme Court. Hence, although on trial appellant preserved the Fourth Amendment claim for review, he did not pursue it through the appellate process. Therefore, the claim was not passed on by the appellate courts of New York and is not properly presented here. Fay v. Noia, 372 U.S. 391, 438–439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In any case, it is without merit. In Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), the Court upheld, over Fourth Amendment objections, the admissibility of a tape recording obtained by a government agent who purported to follow up previous bribes and, like Reed, carried a hidden tape recorder, was voluntarily admitted to the suspect's office and guided the conversation toward incriminatory remarks. See also Osborn v. United States, 87 S.Ct. 429; United States v. Pardo-Bolland, 348 F.2d 316 (2d Cir. 1965), cert. denied 382 U.S. 944, 946, 86 S.Ct. 388, 15 L.Ed.2d 353 (1966); United States v. Kabot, 295 F.2d 848 (2d Cir. 1961), cert. denied 369 U.S. 803, 82 S.Ct. 641, 7 L.Ed.2d 550 (1962). The distinction that the recording in *Lopez* was strategically useful to substantiate the agent's credibility and

the recording here also was legally necessary to corroborate the accomplice testimony is immaterial. The attempted distinction that Lopez knew he was speaking to a federal officer whereas Molinas merely thought he was speaking to a co-conspirator is also without merit, for in Osborn v. United States, supra, Osborn likewise had no knowledge that Vick, who visited his office with the concealed recorder, had at the time any connection with the federal authorities.

■■ Unlike the Fourth Amendment argument, the Fifth and Sixth Amendment claims were passed on by the New York appellate courts, for, the claims were presented on application for leave to appeal to the Court of Appeals and on motion to reargue in the Appellate Division. Regarding the merits of his Fifth and Sixth Amendment claims, appellant apparently recognizes that any direct reliance on Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) is misplaced because his trial started in 1962 and Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), held that Escobedo and Miranda apply only to trials commenced after June 22, 1964 and June 13, 1966 respectively, the dates of those decisions. Hence, appellant relies not on the holdings of Escobedo and Miranda but rather on their supposed radiations and asks that their principles be applied to a suspect who is not in custody. Such an extension of Escobedo and Miranda is unwarranted. Appellant also attempts to draw support from Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); however, Massiah had been indicted. Although the state may have had sufficient evidence to indict Molinas, that is immaterial. Compare Mr. Justice Stewart's statement for the Court in Hoffa v. United States, 87 S.Ct. 408. "There is no constitutional right to be arrested." While the Supreme Court recognized in Miranda that the self-incrimination clause of the Fifth Amendment protects only against compelled testimony, it presumed that all in custody interrogation involves elements of compulsion. Such a presumption cannot cover something said by a lawyer in the quiet of his own office. Cf. United States v. Bottone, 365 F.2d 389, 395 (2d Cir.), cert. denied 87 S.Ct. 514 (1966). Moreover, this was no case of Molinas' testifying against himself; what he said was a crime itself. Also, it may be noted that the Massiah decision was handed down May 18, 1964 and because it involved issues similar to those in Escobedo and Miranda the Johnson date of decision rule may be expected to apply. Prior to Johnson, this court ruled that Massiah is not retroactive. United States ex rel. Romano v. Fay, 360 F.2d 389 (2d Cir. 1966).

■ Appellant finally contends that the four and one-half week adjournment after five weeks of his trial which was caused by the trial judge's kidney stone attack and subsequent recuperation violated his right to due process under the Fourteenth Amendment. This contention must fall because appellant had not established that the adjournment was prejudicial. He has not shown that the jurors had difficulty recalling testimony or had forgotten their impression of the witnesses' credibility. In fact, the judge made available his copy of the minutes, granted the defense additional summation time, allowed it to read from the record and marshalled the evidence. Moreover, on several occasions the jury accepted the judge's offer to have portions of the record read. Appellant has not proved that either improper contact with the jury or unauthorized discussion of the case occurred.

The judgment denying petitioner's application for a writ of habeas corpus is affirmed.