Raymond C. Baratta, J.
This is a motion brought by both of the defendants in the above-entitled prosecution, for a suppression of evidence under section 813-c et seq. of the Code of Criminal Procedure. Defendants demand that a hearing be held or that a suppression be granted of:
1. Any items of evidence seized as a result of a search of an automobile belonging to defendant Nadel.
2. Any items of evidence seized as a result of a search performed upon the person of defendant, Nadel.
3. Any items of evidence seized as a result of a search performed upon the person of defendant Seligman.
4. Any items of evidence which are the fruits of any illegal confession, statement or admission made by either of the named defendants.
5. Any evidence which is the product of illegally obtained recordings or wiretaps.
Defendants were indicted on the 11th day of April, 1967 by indictment No. 37/67 (1), which indictment was superseded by indictment No. 37/67 dated April 24, 1967. The indictment herein stems from an investigation of the defendants, who were conducting real estate appraisals for the Poughkeepsie Urban Renewal Agency.
Hearing granted with respect to any items of evidence seized as a result of the search of defendant Nadel’s automobile. The fact that the prosecution does not contradict the allegations of defendant Nadel does not in itself entitle defendant to a suppression ; for if the People consent to a hearing; answering papers are neither contemplated nor required (Trainor v. Jefferson, N. Y. L. J., May 13, 1965, p. 20, col. 8, Westchester County Ct.; People v. McCoy, 27 A D 2d 858).
Hearing granted with respect to any items of evidence seized as a result of the personal search of the defendants Nadel and Seligman. The People have conceded- that an issue of fact is raised and do not oppose a hearing on this point (Trainor v. Jefferson, supra).
*49 Motion denied with respect to the claim of defendants for the suppression of the fruits of any alleged illegally obtained statements, confessions or admissions of the defendants. Section 813-f of the Code of Criminal Procedure provides the procedure under which the validity of confessions is determined. The People have not given notice under said statute; therefore this phase of the defendants’ motion is premature (People v. Myers, N. Y. L. J., Jan. 19,1967, p. 19, col. 5; People v. McGrath, N. Y. L. J., Jan. 23, 1967, p. 18, col. 8).
Defendants also move for the suppression of any conversations that either of them may have had with Julius Schiller. They allege that these conversations were illegally “seized” by the use of electronic devices. This claim of the defendants’ motion actually involves two possible situations. The first refers to a conversation which took place at the Lido Riviera Restaurant in New York City. The second involves any conversations which may have been seized by the use of wiretaps.
Motion denied with respect to any conversations that may have been seized as a result of wiretaps. In his affidavit in opposition to the defendants’ motion, the Assistant District Attorney stated: ‘ ‘ The People will have no wire-tapping evidence to offer upon a trial.” This statement was based upon the affidavit of Detective Lt. John B. Brophy of the City of Poughkeepsie Police Department, who denies the use of any wiretapping to obtain conversations of the defendants. To that extent, therefore, this motion is academic.
The claim of defendants, with respect to the Lido Riviera Restaurant conversations, raises a more significant question; for in that situation it is admitted by the People that the conversations of the defendants and Julius Schiller were in fact recorded on a tape-recording device. The facts pertaining to these conversations, as set forth in the motion papers, are as follow: On or about the 24th day of February, 1967, local
law enforcement officials were called upon to investigate a complaint of one, Julius Schiller, Avho told the authorities that he had been approached by the defendants Avith respect to the appraisal of his property, under the urban renewal program of the City of Poughkeepsie. The gist of Mr. Schiller’s complaint Avas that the defendants Avore attempting to obtain money from him on a promise that they would falsify the appraisal of his property. The facts further spell out that the defendants, Avhile in the City of Poughkeepsie and in their negotiations with Julius Schiller prior to the 24th day of February, 1967, advised Julius Schiller Avhere he could contact them by telephone in the City of New York, after he got the money out of the bank. There *50 after, and with the advice and consent of local law enforcement officials, the said Julius Schiller drew .$5,000 out of his bank account at the Dutchess Bank & Trust Company of Poughkeepsie, in the City of Poughkeepsie and drove to New York City with several city police officials. It appears that he then accompanied these policemen to the New York City Police Department Bronx Headquarters, at which time he was given a tape-recording device and instructed in the use of said device. Thereafter, the said Julius Schiller travelled to the Lido Riviera Restaurant in New York City. He called the defendants and defendant Nadel told him that they would be there in about 20 minutes. Shortly after the telephone call, the defendants joined the said Julius Schiller at the restaurant. Their conversation, which was approximately 20 minutes long, was recorded by Schiller on the miniature tape recorder, which he had been given by the Police Department. Following the conversations the defendants were arrested. It is the conversations at the Lido Riviera Restaurant which were recorded by Julius Schiller on a miniature tape recorder which defendants now seek to suppress.
The law is well settled that conversational communications are not “ physical evidence ” under the requirement of section 813-e of the Code of Criminal Procedure (People v. Laverne, 14 N Y 2d 304, 309 ; cf. People v. Habel, 25 A D 2d 182,183, affd. 18 N Y 2d 148). Even if there were no ruling on this point, however, this court would deny the defendants’ motion for the suppression of the Schiller conversations. First of all, Julius Schiller would always be competent to. testify as to these conversations. Therefore, the conversations themselves cannot be suppressed. Second,- the facts alleged by the defendants do not demonstrate that a trespassory situation existed with respect to the alleged eavesdropping. The Berger decision (388 U. S. 41), referred to by defendants in support of their motion, demonstrates that the exclusionary rule in the eavesdropping case involves only “ trespassory intrusions ” into constitutionally protected areas. The court examined the development of this rule from the Ohnsteacl case (277 U. S. 438) through the Lopes decision (373 U. S. 427). The decision is clear in its holding that the Fourth Amendment forbids only the actual intrusion into a constitutionally protected area. In this regard the dissent of Mr. Justice Black, which in this case does not conflict with the majority opinion, is pertinent: “ Significantly, the Court does not purport to disturb the Ohnstead-SihermanGoldman distinction between eavesdrops which are accompanied by a physical invasion and those that are not. Neither *51 does the Court purport to overrule the holdings of On Lee v. United States, 343 U. S. 747, and Lopez v. United States, 373 U. S. 427, which exempt from the Amendment’s requirements the use of an electronic device to record, and perhaps even transmit, a conversation to which the user is a party.” (pp. 81-82). This court is of the opinion that the Berger decision does not proscribe the type of action that occurred here.
If there were any doubt that the conversations at the Lido Riviera Restaurant did not violate the constitutional rights of the defendants, the cases of United States ex rel. Molinas v. Mancusi (370 F. 2d 601 [1967]); United States v. Knohl (379 F. 2d 427 [1967]) and Hurst v. United States (370 F. 2d 161 [1967]) make it clarion clear. In Knohl the court pointed out (p. 443): “ The Fourth Amendment protects conversation only against the ‘ surreptitious eavesdropper ’; it does not protect a 1 wrong doer’s misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it. ’ ” In Hurst (supra, p. 165) the court made the following holding: “ As to the use of the secret microphones, transmitters, and recording machines, we must emphasize that appellant’s statements, there recorded or there overheard, were not recitations of past crimes. At the time of utterance and recordation they were elements, or likely elements, of a crime in the course of commission. Appellant was not then under detection or compulsion of any kind. He was acting of his own free will and accord, although under the mistaken belief that he was dealing with 1 friends ’ instead of government agents.”
The same type of situation exists in the present case. Julius Schiller did not seek the defendants initially. He was in New York City at the invitation of the defendants. The defendants were under no compulsion to speak; they were not in custody; they acted under their own free will and made statements which apparently were elements of a crime in the course of commission. Like the court in Hurst (supra) this court can perceive no invasion of defendants’ constitutional rights under the Fifth Amendment or the Sixth Amendment of the United States Constitution. Therefore, this court finds that the defendants ’ rights under the Fourth, Fifth and Sixth Amendments were not violated by the recording of the conversations by Julius Schiller, who was a party to the conversations.
Defendants raise another argument, however, which is based upon Berger. They contend that Berger has wiped section 813-a of the Code of Criminal Procedure from the law books of this State and that as a result, any eavesdropping, trespassory or not trespassory, is forbidden by section 738 of the New *52 York Penal Law. They further argue that the facts in this case are within the purview of section 738. This court does not agree. The pertinent section of section 738 proscribes eavesdropping by a person who, “not present during a conversation or discussion who wilfully and by means of instrument overhears or * * * procures or permits another to so do,
without the consent of a party to such conversation or discussion ”. The facts as set forth in the motion papers make it absolutely clear that the conversations between Julius Schiller and the defendants were obtained with the consent of one of the parties to those conversations, namely, Julius Schiller. Thus, it is- the opinion of this court that the recording of the Lido Riviera Restaurant conversations was not eavesdropping within the meaning of section 738. It may be argued that the consent necessary under subdivision 2 of section 738 is the consent of the party to be charged. With this the court does not agree. Section 738 is a highly restrictive statute and in fact is more restrictive in its control than even the requirements of the Federal Constitution. Thus, it must be construed strictly. If the Legislature had intended the consent to be of the party charged, it would have been quite simple for them to word the statute in that way. Having failed to do so, this court holds that the consent of any of the parties to the conversations takes the conversations out of the control of section 738. In the only holding of a New York court on this point, the law of this State is in accord with the opinion of this court (see People v. Velella, 200 N. Y. S. 2d 966).
There is still another reason why the actions complained of herein do not fall within the control section 738. Defendants argue that Julius Schiller was an instrument of the police and that as a result,, therefore, the police were persons not present, who violated section 738 by using Julius Schiller as an instrument to record the conversations at the Lido Riviera Restaurant. That argument is without merit. In a hearing conducted by this court under CPLR 2218 it was learned that the electronic device actually used by Julius Schiller was a tape recorder and not a radio transmitter. Clearly on the facts alleged by the defendants, Julius Schiller was present during the discussions between himself and the defendants. As a result, he was certainly not in violation of section 738 when he recorded the conversations through the use of a tape recorder, unless it can be said that Schiller himself was an instrument of the police. Section 743 defines those instruments which are used for eavesdropping as proscribed in section 738. Schiller was none of thes'e. As a natural person, he was in control of the instru *53 merit when lie entered the restaurant and was in a position to choose or not to choose whether or not to record the conversations. Schiller operated the machinery that resulted in the recording of these conversations and as a result, therefore, was not an instrument of the police so as to bring them within the control of section 738.
Defendants also argue, however that section 738 controls on the ground that the police were not present during the conversations and were persons who aided and authorized Schiller to record the conversations. While it is clear that the police did in fact aid, and authorize Schiller to record the conversations, it is the opinion of this court that these actions do not constitute a violation of section 738. The court holds that the phrase,- “ another to so do ” must refer to another person who is guilty of violating subdivision 2 of section 738. As a result, therefore, the defendants’ arguments are without merit; for Schiller was in fact present during the conversations at the Lido Riviera Restaurant. Thus, it is the opinion of this court that on all of the grounds hereinbefore mentioned, the recording of the conversations between the defendants and Julius Schiller by Julius Schiller at the Lido Riviera Restaurant and through the use of a tape recorder was not violative of section 738 and therefore, was not illegally obtained.
The motion is, except where a hearing is conceded, denied in all respects.