John Thomas WEAVER, Petitioner-Appellee,

v.

Ward LANE, Warden of the Indiana State Prison, Respondent-Appellant.

No. 16095.

United States Court of Appeals Seventh Circuit.

July 27, 1967.

John J. Dillon, Atty. Gen. of Indiana, Douglas B. McFadden, John F. Davis, Deputy Attys. Gen., Indianapolis, Ind., for appellant.

Thomas L. Shaffer, Notre Dame, Ind., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

The District Court granted the petition for Writ of Habeas Corpus filed by the petitioner-appellee, John Thomas Weaver, and entered an order discharging him and releasing him from custody subject to detention in custody pending review of that decision.

The District Judge conducted a full hearing on the issue of the legality of a search and seizure by the Indiana police prior to the trial in which the petitioner was convicted after jury trial in the Circuit Court of Madison County, Indiana, and sentenced to life imprisonment for rape, on May 19, 1961. That conviction was affirmed by the Indiana Supreme Court, Weaver v. State, 243 Ind. 560, 187 N.E.2d 485 (1963). The Court there dealt with the adequacy of the proof offered. At the trial venue had been proved by admissions of the petitioner made to a jail-mate that he had taken a 5-year-old girl to a place "between here and Linwood" which the Court judicially recognized as in Madison County, Indiana. Although the examining physician had testified that a complete vaginal examination of the child was not possible without use of anesthesia which was contra-indicated because she was then suffering from chicken pox accompanied by a high fever, the Court held that the jury might infer penetration from the physician's description of profuse bleeding and of his having to stitch multiple lacerations. The jury had also

been allowed to hear evidence of admissions made by the petitioner to his aforesaid jail-mate and to one John Carroll at whose home he was staying, that the blood on his person had come from sexual intercourse. Petitioner was quoted by his jail-mate as having said he took the child because of some trouble he had with her mother. The petitioner had also verified in his own testimony that when asked if petitioner was the one who had taken her from her bed into his automobile and if he were the man who had hurt her, the child in question (who did not appear as a witness) had nodded her head affirmatively. The petitioner at one time had explained the blood found in his automobile as coming from a rabbit he had killed. The blood, however, was shown to be human and of the same type as that of the child involved.

The issues presented to the District Court were apparently not considered by the Indiana Supreme Court.

At the hearing in the District Court, Patrolman Clement Russell of the Anderson, Indiana, Police Department, testified that he went to the Adler Hotel to meet a Mrs. Harrison in response to her telephoned complaint of child molestation received about 6:10 a. m. on November 18, 1960; that he, Mrs. Harrison, whom he found in an hysterical condition, and the child, whose physical condition he described, all returned to the Harrison apartment, where Mrs. Harrison had said that "Tom Weaver" molested her child. She had described a blue, 1956 Dodge automobile which she thought belonged to Tom Weaver and which she had seen leaving the rear of her apartment building. As a result of Patrolman Russell's reports, he was relieved at about 7:00 a. m. by Detectives Omer Garner and Cage. Detective Garner testified that his questions of Mrs. Harrison and the child elicited similar information to that given Patrolman Russell. On further investigation and inquiry in the general area, they ascertained that John Thomas Weaver was living in Linwood, Indiana, at the John Carroll home, in the neighborhood of which Detective Garner looked in vain for the described automobile. He returned about 10:00 or 10:30 a. m. with Inspector Whittinger and waited for the appearance of the automobile. By this time the name given by Mrs. Harrison had been checked and the license number beginning with "FJ," an Alexandria issue, was known to the officers who had also been told that this was a 1955 Dodge of two-tone green color.

An automobile bearing license number FJ3808 shortly drove up and two women, one of whom proved to be Mrs. John Carroll, got out. The two police officers approached, identified themselves, and asked if the women knew John Thomas Weaver. Mrs. Carroll said he was staying in her home, and in response to the request of the officers, invited them in, saying that Mr. Weaver "should be in bed." Detective Garner asked for Mr. Weaver to come out to the living room where the officers were. He watched Mrs. Carroll go to a door, knock and say "There are two police officers from Anderson who would like to see you." Mr. Weaver had come out, partially dressed, was told the officers had a complaint of child molestation and would like him to come to police headquarters with them. He asked they wait till he was dressed. Detective Garner asked him to bring along the clothing he had worn before going to bed. The petitioner left the house with the police officers.

Although he testified that he would not have shot the petitioner to prevent his escape because he knew who petitioner was and presumably could find him again, Detective Garner said he would have used a certain minimum of force to hold the petitioner. The District Court concluded that the petitioner was under lawful arrest at that time without a warrant but pursuant to identification of him by Mrs. Harrison as the assailant of her child.

As they walked from the Carroll residence to the police car, the three passed the FJ3808 automobile and the petitioner got his coat out of it. While he did so, Detective Garner looked in and saw blood

on the seat. There was a conflict in the testimony as to whether Detective Garner had the petitioner's permission to take an order book from the car at that time. He did take such a book. The District Court concluded it was taken without warrant or permission. The book was admitted in evidence at the original criminal trial without objection. The District Court expressed no opinion on the legality of its seizure.

The petitioner testified that he saw an Anderson City Policeman on a motorcycle guarding this car and he knew that when he and the arresting officers got back to town they sent a wrecker to tow his car into the City Police Garage. He testified that he gave no consent to that and was never given a warrant for seizure of his automobile.

The car was examined by technicians on the Anderson police force about 11:00 A.M. or 12:00 noon that day. A section of blood-stained seat cover, blood stains from the dash panel and the front seat were removed and were used in evidence at the original criminal trial.

The District Court held that search of the automobile hours later in the police lot was not substantially contemporaneous with the arrest nor confined to the immediate vicinity of the arrest.

We believe that the repeated references to the work of the technicians at the police lot as a "search" and the fact that only parts of the automobile were offered in evidence at the trial rather than the entire car have diverted the attention not only of petitioner's counsel but of the District Court from the unique circumstances of this case.

As a result the Preston Rule [Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964)] as considered in Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); James v. State of Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30 (1965); Sisk v. Lane, 7 Cir., 1964, 331 F.2d 235; and United States v. Nikrasch, 7 Cir., 1966, 367 F.2d 740, has been misapplied here.

In Preston, the petitioner and two companions were arrested for vagrancy after being seen for several hours in a parked car. They were searched for weapons and taken to a police station. The officers had the car towed to a garage where for the first time they searched the car and found two loaded revolvers in the glove compartment and, later, in the trunk, illegally manufactured license plates and mask items which were used in evidence, over objection, together with a confession of one of petitioner's companions that he and two others (not petitioner) intended to rob a particular bank. The petitioner and three others were convicted of conspiracy to rob a federally insured bank.

In Stoner, the petitioner was convicted of armed robbery. Evidence was secured by search of his hotel room in his absence, without warrant, with the consent only of the hotel room clerk who was told by the officers that they were there to make an arrest of a man who had possibly committed a robbery and they were concerned about the fact that he had a weapon. The petitioner was arrested two days later in another state.

In James, the petitioner was arrested and then driven more than two blocks away to his home. The police officers broke open the door, conducted a search which after several hours yielded only a single morphine tablet and narcotics equipment which was the basis of the later conviction.

Sisk was arrested while in "control" of his automobile. He was driven to the Sheriff's Headquarters, and his automobile was towed. It was searched immediately and clothing and a large sum of money were found. It was then barricaded in the garage and six days later a further search disclosed mats with blood spots which were admitted over objection at a trial for murder. The Court in Sisk affirmed denial of the petitioner's application on the limited retroactivity of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961) while stating that the search (made in 1950) would have

been illegal under the Preston Rule enunciated in 1964.

In Nikrasch, the police officers secured false serial plates some eight hours after arrest of the defendant and his companions at a gasoline station, on a charge of disorderly conduct. There was evidently no issue as to search of the car prior to arrest with consent of one of the occupants, but it was the subsequent search and discovery of the false serial plates which led to the defendant's confession to the theft of the automobile.

In the case before us, Detective Garner saw the blood-stained interior of the automobile as he came by with the petitioner who had just been arrested and who was getting his coat out of the car. As the petitioner said, the automobile was already in effect in custody of the watching motorcycle policeman. It was not isolated, later-discovered items which were seized, but the entire automobile itself as the scene of the crime for which the petitioner was being arrested.

In Preston, the petitioner was arrested for vagrancy and convicted on evidence later secured of conspiracy to rob a bank. In Stoner the petitioner was arrested two days later in another state. Nikrasch was arrested for disorderly conduct and convicted of theft.

As the respondent notes, the U. S. Supreme Court in Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed. 2d 730 (1967), petn. for rehrg. den. 386 U.S. 988, 87 S.Ct. 1283, 18 L.Ed.2d 243 determined that the lower court had erroneously held that Preston required the search in Cooper be considered unreasonable within the meaning of the Fourth Amendment. In Cooper, evidence was found a week after the arrest in the glove compartment of an automobile seized without warrant and held in a garage. Judgment of forfeiture of that automobile was not entered until after Cooper's trial and conviction of a narcotics violation. The Supreme Court distinguished Preston where the police had arrested the petitioner for vagrancy but held the

automobile because they believed it might have been stolen.

■ In the case before us, the entire automobile might have been produced in evidence. As a matter of convenience the technicians prepared samples, tested the blood, etc. It was already known that the interior of the automobile was blood-stained. The petitioner had been arrested and his automobile had been seized in the same general transaction.

The District Court speaks of the petitioner's having "rented" his room in the Carroll home. The respondent disputes that finding. The issue becomes important in connection with recovery of clothing petitioner had worn early on the morning of November 18, 1960. Mrs. Carroll granted permission to Detective Garner to search the room which the petitioner had been using. He took possession of blood-stained trousers which were admitted in evidence at the trial. The District Court held that these were illegally seized.

Mr. Weaver testified that he had been staying with the Carrolls for about a week, on an arrangement that he would stay with them for a few days until he could find a place to rent, that he would leave when he was ready. He stated that he did pay "rent" in that he provided them with a carpet for their living room and that he occasionally helped with money for groceries when the Carrolls were short. There was no set limit on his stay as to time or allocation of the gift of the carpet or funds for groceries.

■ We find no basis for a holding that Mr. Weaver was a tenant with such exclusive right to the room in which he had been sleeping as to oust his hosts, the actual occupants of the house, from authority to grant consent to a search. Mrs. Carroll was not in the same limited position as the hotel room clerk in Stoner who authorized search of a hotel room rented on specific terms to an occupant who was temporarily absent. At worst, Mrs. Carroll had an equal right with Mr. Weaver to access, and she could give consent to a search of a room in her

home. United States v. Sferas, 7 Cir., 1954, 210 F.2d 69, 74–75; United States v. Cudia, 7 Cir., 1965, 346 F.2d 227, 229, cert. den. 382 U.S. 955, 86 S.Ct. 428, 15 L.Ed.2d 539, rehrg. den. 382 U.S. 1021, 86 S.Ct. 612, 15 L.Ed.2d 536.

We conclude that the order granting the Writ of Habeas Corpus releasing the petitioner from custody must be reversed and the cause remanded for denial of the petition for Habeas Corpus.

Mr. Thomas L. Shaffer of the Indiana bar was appointed by the District Court to represent the petitioner. He continued to represent the petitioner in the proceedings before this Court. Mr. Shaffer has exhibited skill and dedication in carrying out his duties in this regard, for which this Court is grateful.

Reversed and remanded.

HASTINGS, Chief Judge (dissenting).

I would affirm Judge Grant on the search and seizure question involved in this case for the reasons stated in his unpublished memorandum opinion.

I would further affirm on the following grounds. Sometime after Weaver was arrested, he was taken involuntarily and in hand-cuffs before the child he was accused of molesting. Weaver had no counsel at that time and had not been advised of his rights. When Weaver confronted the child, a police officer asked her whether Weaver was the man who had hurt her. The child nodded; Weaver made no statement of denial.

At trial, the trial court refused to permit the child to testify, but, under a hearsay exception, allowed the police officer to relate that the child had nodded when he asked her if Weaver was the man who had hurt her. Aside from questions of compulsory self-incrimination, this procedure resulted in the use of what amounted to testimony by the child without requiring the child to appear as a witness. This was prejudicial error because it denied Weaver his Sixth Amendment rights of confrontation and cross-examination of witnesses against him.

Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

For the foregoing reasons, I would affirm Judge Grant's issuance of the writ of habeas corpus, with the right of the State of Indiana to retry the defendant within a reasonable time.