**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Orrin Scott REED, Defendant-Appellant.**

**No. 16427.**

United States Court of Appeals Seventh Circuit.

Feb. 19, 1968.

Rehearing Denied May 6, 1968.

William E. Plane, Indianapolis, Ind., Orrin Scott Reed, South Bend, Ind., Richard R. McDowell, Indianapolis, Ind., Cadick, Burns, Duck & Neighbours, Indianapolis, Ind., of counsel, for appellant.

Alfred W. Moellering, U. S. Atty., Joseph F. Eichhorn, Asst. U. S. Atty., Fort Wayne, Ind., for appellee.

Before DUFFY, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.

DUFFY, Senior Circuit Judge.

The defendant was convicted of bank robbery and placing the life of a person in jeopardy in violation of Title 18 U.S.C. § 2113(d). On the first appeal, this Court reversed and remanded for a new trial, United States v. Reed, 376 F.2d 226 (1967). We there held by a two to one decision, that the testimony in the trial court with respect to the "mug-shots" of Reed taken in prison was prejudicial error. The dissenting opinion, citing Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557, stated that the evidence of guilt in this case was overwhelming, and that the error relied on by the majority " * * * [D]id not influence the jury or, at worst, had but very slight effect."

A second trial was held and the defendant Reed was again convicted. On this appeal, he urges error because of the admission into evidence of a hat and a pair of sunglasses.

Vernon Laue lived in Rolling Prairie, Indiana. He was the manager of the Rolling Prairie Branch of the Citizens Bank of Michigan City, Indiana. His home was about three city blocks from the bank.

On December 15, 1965, at about 6:45 p. m., the Laue family, consisting of Mr. and Mrs. Laue and three children, were having dinner when a door to their home was crashed in and two men entered. At least one of these men carried a gun. The shorter of the two men, later identified as Reed, required Laue to obtain the keys to the bank, and then to accompany him in an automobile. They drove to the rear door of the bank. In traveling to the bank, they used a sports car in which the robbers had, apparently, travelled. The second man remained with Mrs. Laue and the three children.

At the trial, Mr. Laue testified as to the actions and activities of Reed at the bank in which he obtained certain sums of cash and currency. After a relatively brief period at the bank, Reed drove Laue back to his home. Mrs. Laue and the children had not been harmed. One of the robbers then tore out the telephone wires. Reed then took the keys of Laue's automobile and threw them on the front lawn where a quick recovery of the keys would be unlikely. The two men then drove off in the sports car which had been used on the trip to the bank.

At the trial, both Mr. and Mrs. Laue positively identified defendant Reed, the shorter of the two men, as the man who traveled with Laue to and from the bank on December 15, 1965, and Laue described defendant Reed's activities at the bank, including the obtaining of the cash and currency.

The hat in question was Government Exhibit No. 5. It was a very unusual looking hat. It was described as "out of style, gray, porkpie, flat top hat." It belonged to Clarence Bull, the stepfather of defendant, at whose home defendant was staying on the date of the bank robbery. The hat was available to defendant Reed.

Although defendant testified he usually did not wear any kind of a hat, both Mr. and Mrs. Laue identified the hat. Mrs. Laue described in detail the unusual hat defendant was wearing the night of the bank robbery. Comparing it with Exhibit No. 5, she testified "It appears identical." Mr. Laue testified as to Exhibit No. 5 "It would be one just like that, yes."

Mr. Bull identified the hat (Exhibit No. 5) as his. At the request of the investigating officers he handed it over to them. He obtained it from the top of a dresser in his own bedroom.

■ As might be expected, defendant denied he wore Exhibit No. 5 on the date of the robbery. He was supported by the testimony of his girl friend who occupied a bedroom with him at Mr. Bull's home. We hold there was no constitutional issue raised with respect to Exhibit No. 5.

We must, of course, consider the evidence in the light most favorable to the Government. United States v. Sosa, 379 F.2d 525, 527 (7 Cir., 1967); Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). We think the unusual looking hat was sufficiently identified, and that no error was committed by the trial court in admitting Exhibit No. 5 into evidence.

Defendant also claimed error in the admission into evidence of a pair of sunglasses. These glasses were obtained by officers without a search warrant three days after the robbery. Mr. Bull, the owner of the house, consented to the search, and the glasses were obtained from the dresser in the bedroom which the defendant and his girl friend had been occupying. Their occupancy of this room was, apparently, on a temporary basis. They paid no rent. The testimony indicates that defendant and Helen Eldridge were not limited to any one room in the Bull home.

The situation here is similar in many respects to that in Weaver v. Lane, 382 F.2d 251 (7 Cir., 1967). There, defendant stayed with occupants of a house on an arrangement that he could remain until he could find a place to rent. As "rent", he provided the occupants of the house with a carpet and with money for groceries. We there held that there was no basis for holding defendant was a tenant with such exclusive right to the room in which he had been sleeping as to oust his hosts, the actual occupants of the house, from authority to grant consent to a search. It is true there was a dissenting opinion in *Weaver,* but the emphasis in that opinion was that the defendant had been denied his constitutional rights under the Sixth Amendment —the right to confrontation and cross examination of witnesses against him. United States v. Sferas, 210 F.2d 69, 74, 75 (7 Cir., 1954); United States v. Cudia, 346 F.2d 227, 229 (7 Cir., 1965); cert. den. (1965), 382 U.S. 955, 86 S.Ct. 428, 15 L.Ed.2d 359, rehrg. den. (1966), 382 U.S. 1021, 86 S.Ct. 612, 15 L.Ed.2d 536.

It is apparent that applying the rule of the *Weaver* case, Mr. Bull was not ousted from authority to consent to the search of any of the rooms in his house, and that he did, in fact, consent to the search of the bedroom which had been occupied by defendant. However, we need not rest our decision on this point.

■ The sunglasses were such an insignificant and unimportant item pertaining to the identification of defendant that there is no reasonable possibility that such evidence might have contributed to the conviction of defendant. Fahy v. State of Connecticut, 375 U.S. 85, 86, 87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

The pertinent rule on which we rely is stated in Chapman et al. v. State of Cali-

fornia, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). "We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction."

The Supreme Court states in *Chapman* (386 U.S. at page 24, 87 S.Ct. 824) that there isn't much difference between the "no reasonable possibility" test of *Fahy* and "harmless beyond a reasonable doubt."

The Court is indebted to Mr. William E. Plane of the Indianapolis, Indiana bar who was court-appointed counsel for defendant on this appeal. Mr. Plane's dedicated and meritorious service as counsel for defendant is much appreciated.

The judgment of conviction is

Affirmed.