**George Carthel HOOPER, Appellant,**

v.

**Harold R. SWENSON, Warden, Missouri State Penitentiary, Jefferson City, Missouri, Appellee.**

**No. 19009.**

United States Court of Appeals
Eighth Circuit.

Sept. 26, 1968.

Edwin D. Akers, Jr., St. Louis, Mo., for appellant and filed brief.

Gerald L. Birnbaum, Asst. Atty. Gen., of Missouri, Jefferson City, Mo., for appellee; Norman H. Anderson, Atty. Gen., of Missouri, was on the brief with Gerald L. Birnbaum, Jefferson City, Mo.

Before VAN OOSTERHOUT, Chief Judge, and BLACKMUN, Circuit Judge, and VAN PELT, District Judge.

VAN PELT, District Judge.

This is a habeas corpus action brought in forma pauperis by a state court prisoner against the respondent Warden of the Missouri State Penitentiary. It was originally filed in the Western District of Missouri and thereafter was transferred to the Eastern District of Missouri, Eastern Division, the court finding that if an evidentiary hearing was granted the witnesses were in or near St. Louis. An order to show cause was entered and a response to the order filed.

The District Court, after considering the state court files and without a hearing, denied the writ.

This is petitioner's third habeas corpus action in the federal courts. The first two were dismissed for failure to exhaust state remedies. After the second dismissal the petitioner brought an action in the state courts under Missouri Supreme Court Rule 27.26, V.A.M.R., claiming the same relief there as in this action. A denial of relief in that proceeding was affirmed on appeal, State v. Hooper, 399 S.W.2d 115 (Mo.1966). Petitioner has now exhausted his state remedies.

Petitioner's grounds for issuance of the writ are:

1) denial of confrontation of a witness;

2) denial of effective assistance of counsel;

3) denial of due process and equal protection of the law in proceeding under the Missouri Habitual Criminal Act.

A short recital of the facts is needed.

On the 24th of February, 1961, two men entered Barth's Market in St. Louis. After picking up some items of groceries, they produced a pistol and forced Mr. Barth to put the bills and half-dollars from the cash registers in a paper sack. They then instructed Mr. Barth and his employee, Arthur Sona, to lie down on the floor. The two robbers then left the premises. Mr. Sona hearing the robbers leave, got up and ran outside. By then the men were out of sight. However, Mr. Sona observed a two-tone car, dark brown and light brown driving away from the scene down a side street at a high rate of speed.

Mr. Sona and Mr. Barth later identified Leon Joseph Koester and Gerald

Clark Daggett as the two men who entered the store.

Paul Brown, a witness at the trial, testified that he had driven up and parked in front of 3321 Klein Street, which was around the corner from the Barth Market. When he drove up he noticed a man, whom he identified as petitioner, sitting behind the wheel of a car parked near the back door at the side of Barth's Market. He identified the car as being a two-tone brown and white Chevrolet. After Mr. Brown had parked his car he saw two men come running around the corner one of whom had a sack in his hand. The two men jumped into the car. The car started up and proceeded down the street past where Mr. Brown was standing. As the car went past him, Mr. Brown had a good view of the driver. He identified Hooper as the driver the afternoon of the robbery. Mr. Brown also took note of the license number and later gave it to the police.

Later that afternoon the car described by Mr. Brown was seen by a Madison, Illinois, policeman. The police officer pulled alongside the car and ordered it to pull over. Instead the car drove off at a high rate of speed and the police officer lost it in traffic. He testified that the petitioner was driving the car. The car was found abandoned in an area outside the limits of Madison, Illinois, shortly thereafter. When found the car contained a sack of groceries similar to that taken from the Barth Market. Koester, Daggett and petitioner were arrested shortly thereafter in a tavern not far from where the car was abandoned. At the time of his arrest, petitioner had a key on his person which fit the ignition, doors and trunk of the abandoned car. Koester and Daggett each had a large quantity of money on their person, totalling nearly one thousand dollars. Petitioner had $4.30 on his person. The proceeds of the robbery of the store were approximately $940.00. [There is an inference in the record that petitioner may have had $24.00 on his person but the direct testimony is $4.30.]

At defendant Hooper's trial, Ralph Kube, a St. Louis police officer, was allowed to testify over objection that he had questioned these three men while returning them to St. Louis from Madison, Illinois, and that "Koester admitted partaking in the holdup, and stated that Daggett and Hooper were with him. And Daggett and Hooper refused to make any statement." (P. 49 Transcript of original trial of Petitioner.) Petitioner offered no evidence. The case was argued and submitted and defendant was found guilty of robbery in the first degree, with a dangerous weapon. Evidence as to his prior record (two convictions) was introduced to the court, out of the presence of the jury. He was then sentenced by the court, as an habitual criminal, to twelve years imprisonment. It is this conviction and sentence that is under attack here.

The claimed denial of confrontation is based upon the testimony of Kube above quoted. The District Court in this action, held that even though petitioner herein was denied his right of confrontation, it was harmless error only.

In Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the state introduced during the trial the testimony of a witness which had been taken at a preliminary hearing at which Pointer had been unrepresented by counsel and had not cross-examined the witness. Before the testimony was offered, the state had shown that the witness was no longer available to testify. The Court said, at p. 405, 85 S.Ct. at p. 1068: "There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." The Court held that the use of the transcript of the testimony at the preliminary hearing denied Pointer a constitutional right and reversed his conviction.

In Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), an alleged accomplice who had been tried separately and convicted, was called as a witness against Douglas. The alleged accomplice invoked his privilege against self-incrimination and refused to answer the questions addressed to him. Under the guise of refreshing the witness' memory, the prosecutor was allowed to produce a purported confession of the witness which implicated Douglas and was allowed to read the confession to the witness with periodic questions of "Did you make that statement?" (Id. at p. 416, 85 S.Ct. 1074). The witness refused to answer these questions also. At p. 420, 85 S.Ct. at p. 1077 the Court said:

"Hence, effective confrontation of Loyd was possible only if Loyd affirmed the statement as his. \* \* \* This case cannot be characterized as one where the prejudice in the denial of the right of cross-examination constituted a mere minor lapse. The alleged statements clearly bore on a fundamental part of the State's case against petitioner. The circumstances are therefore such that 'inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.' "

In Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1866) petitioner's counsel had agreed that the case would be tried in a truncated type of trial available in Ohio. This type of trial did not allow the petitioner the right to put on evidence or cross-examine. The Court held that there was no showing of a voluntary waiver of these rights by petitioner and the Court reversed his conviction.

In Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the petitioner was represented by counsel at the preliminary hearing. However, counsel did not cross-examine an alleged accomplice of the petitioner when the accomplice testified implicating the pe-

titioner. Petitioner's counsel had also been the accomplice's counsel until the accomplice took the witness stand. The Court held the use of the transcript of this testimony improper without a showing that the alleged accomplice could not have been produced to testify.

■ Hooper, the petitioner here, had no more opportunity to cross-examine the witness against him than Douglas in Douglas v. State of Alabama, supra, or Brookhart in Brookhart v. Janis, supra, and less opportunity than the petitioners in Barber v. Page, supra and Pointer v. State of Texas, supra. There is no showing in this record that the state could not have produced Koester if they wanted his testimony, rather than putting the statement into evidence as they did. It is clear in this case that petitioner was denied the right to confront the witnesses against him.

■ There would seem to be no question as to the retroactivity of the cited holdings of the Supreme Court. Barber was originally tried in 1961 and his appeal was determined adversely to him in 1963. Brookhart was tried in 1962 and apparently did not appeal his original conviction. Both of these cases were thus final before the decision in Pointer v. State of Texas, supra.

Having decided that petitioner was denied his right of confrontation by the witnesses against him and that the decision in Pointer v. State of Texas applies retroactively, the only question remaining is whether this deprivation of a substantial right may be termed harmless error.

In speaking of harmless error, the Court said in Fahy v. State of Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171:

"We are not concerned here with whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."

In Chapman v. State of California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) the Court said in explaining *Fahy:* "We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." The court also held that the burden was on the beneficiary of the error to make this showing.

Also in *Chapman,* it is stated at pp. 25–26, 87 S.Ct. at p. 829:

"And though the case in which this occurred presented a reasonably strong 'circumstantial web of evidence' against petitioners, [citation omitted], it was also a case in which, absent the constitutionally forbidden comments, honest, fair-minded jurors might very well have brought in not-guilty verdicts."

We must thus determine whether without the hearsay statement, defendant's guilt is proved beyond a reasonable doubt. To put the question in the language of *Chapman,* supra, we must determine whether honest fair-minded jurors without this hearsay statement might well have brought in a not guilty verdict.

A reading of the record convinces this court, as it did the trial court, of defendant's guilt. We do not see how anyone could conclude on any reasonable hypothesis that defendant as driver of the get-away car was not guilty as charged. He was in the driver's seat of this car which was parked near the back side door of the place which was robbed. When the two men who robbed the store, one of whom was carrying a sack, ran out and jumped into the car which had the car door open, and took off, defendant was driving the car. Hooper was driving the car when Sgt. Pizia of the Madison, Illinois, police department pulled alongside the car Hooper was driving and "told them to pull over." He was asked:

"Q. After you told these men to pull over what occurred?

A. This boy drove off at high rate of speed."

Five warning shots which were fired went unheeded. The chase continued through the business district of Granite City back into the City of Madison when the policemen lost them in the traffic. Defendant was in a tavern not far from where the car which he had been driving was found.

It would be a miscarriage of justice to afford the petitioner herein a new trial because of the reception of this evidence, or to say that any reasonable juror could conclude that he was not guilty of the crime with which he was charged if this evidence had not been admitted.

Petitioner urges that his conviction and sentence were secured in violation of the due process and of the equal protection clauses of the Fourteenth Amendment in that he was denied effective assistance of counsel. This claim is based not upon action of counsel during the trial but rather upon the fact that a timely motion for new trial was not filed. The trial court permitted the filing of the motion for new trial nunc pro tunc. The Missouri Supreme Court held this to be error and stated that it would disregard the motion because not timely filed. See State of Missouri v. Hooper, 364 S.W.2d 542. The court followed this with the statement that five of the seven assignments were so general as to be ineffective to preserve anything for review, that one was without merit and the remaining assignment was not supported by the record.

■ Why the motion was not timely filed does not appear in the Missouri Supreme Court opinion. It is clear that the court did not regard the motion as meritorious. We will not hold the petitioner was deprived of effective assistance of counsel because of this failure relating to the filing of an ineffective motion for new trial.

■ The remaining assignment of error relates to petitioner's sentence under the Missouri Habitual Criminal Act.

On May 6, 1960 petitioner pled guilty in the state courts of Missouri to two separate felonies. One charged operating a motor vehicle without consent of the owner. The other charged an assault with intent to rob. He received a five year sentence on each charge, the two sentences to run concurrently. Execution was suspended for two years and on May 6th he was placed on probation.

Petitioner argues that these were not prior convictions under the Missouri statute because the Habitual Criminal Act is not applicable "where the sentence in the prior conviction has been suspended." He relies upon State v. Gordon, 344 S.W.2d 69, a Missouri case in which the Missouri Supreme Court held that the provisions of its Habitual Criminal Act were not applicable where the imposition of the defendant's sentence had been suspended and the defendant was merely placed on probation. He argues under Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894, that retroactive application cannot be given to a new construction of a statute and in effect petitioner claims that if the rule in Gordon is to be reversed by the Missouri Supreme Court it cannot under Bouie be made to apply retroactively to him.

The Missouri Supreme Court did not regard their decisions in Gordon and Hooper inconsistent. In petitioner's case involving his motion to vacate sentence they said:

"Second: the record of his sentence in the robbery case and his sentences for the prior felony convictions simply does not support his allegations. Exhibits A and B attached to his motion to vacate show that he was sentenced to five years in the Department of Corrections for each of the prior felonies on June 1, 1960, and subsequently on the same day placed on probation; thereafter, on May 31, 1961, his trial began on the robbery charge, and on October 13, 1961, he was sentenced on his conviction of that charge after his motion for new trial was overruled. The facts in State v. Gordon, Mo., 344 S.W.2d 69, cited by defendant, are distinguishable from the facts in this case. In Gordon the Habitual Criminal Act was not applicable because imposition of sentence for the prior felony had been suspended; here, defendant was sentenced and subsequently placed on probation for the prior felony convictions more than a year before his sentence in the robbery case." State of Missouri v. Hooper, 399 S.W.2d 115, 117.

We agree with the interpretation of the Missouri statute by the Missouri Supreme Court. Clearly, in Hooper's case he received two five-year sentences. Execution of the sentence was suspended. This is clearly within the contemplation of the Missouri statute, Sec. 556.280 RS Mo 1959 (Habitual Criminal Act), V.A. M.S. which is applicable to a person who shall be sentenced and is subsequently placed on probation.

The three assignments of error are each without merit and the trial court is affirmed.