**UNITED STATES of America ex rel. William SAVINO, Petitioner,**

v.

**Hon. Harold W. FOLLETTE, Warden of Green Haven Prison, Stormville, New York, Respondent.**

**No. 68 Civ. 3728.**

United States District Court
S. D. New York.

April 30, 1969.

Herbert A. Lyon, Kew Gardens, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, for respondent; Brenda Soloff, New York City, of counsel.

OPINION

COOPER, District Judge.

Petitioner, applying to this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 et seq., is presently confined in Green Haven Prison, Stormville, New York, having been convicted by a jury in 1961 of the crimes of robbery, first degree, grand larceny, first degree, and assault, second degree. Petitioner was tried jointly for these offenses in the former County Court, Kings County, with co-defendant William DeBerry. He

was sentenced to terms of ten to thirty years on the robbery count, five to ten years on the grand larceny count and two and a half to five years on the assault count; the latter two sentences to run concurrently with the first.

The judgment of conviction was affirmed by the Appellate Division, People v. Savino, 20 A.D.2d 901, 248 N.Y.S.2d 984 (2d Dept. 1964), and without opinion by the New York Court of Appeals at 15 N.Y.2d 778, 257 N.Y.S.2d 345, 205 N.E.2d 536 (1965).

Petitioner previously sought a writ of habeas corpus in this Court, but his application was dismissed by Judge Cannella "in order to give the New York courts an opportunity to review their previous disposition of petitioner's claims in the light of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed2d 705 (1967)." United States ex rel. Savino v. Follette, 66 Civ. 1274 (S.D.N.Y. July 11, 1967). The New York Court of Appeals thereafter granted petitioner reargument. The case was reconsidered in the light of *Chapman,* and the original judgment of affirmance was adhered to. People v. Savino, 22 N.Y.2d 732, 292 N.Y.S.2d 115, 239 N.E.2d 909 (1968).

Based upon the papers before us and the record of petitioner's trial,[1] certain facts are undisputed. Mrs. Adeline Bergman was robbed by two men at her residence on March 23, 1961. The two men pushed their way into her apartment and remained there for some forty-five minutes. During this time the man she identified at trial as petitioner engaged her in intermittent but extended conversation thus affording her ample opportunity to observe his features. Mrs. Bergman called the police immediately after the robbers left. She told Detective Sutton, who conducted the investigation, that one of the robbers, whom she later identified as petitioner, was about 28 to 30 years old, five feet ten inches tall, heavy set and powerfully built, weighing about 190 pounds. She testified at trial that she described this man's distinguishing features to the police as "bushy, thick brows," "beady" eyes, and a "dark, pasty complexion" with "little marks," a "full mouth" and "protruding lips," a nose which was "not too wide" and "nice" ears.[2] She described the clothing he wore as a dressy black overcoat of a smooth, flat material with two pockets,[3] and a black hat having a velvet texture, a narrow brim, and a black and white intertwined band.[4]

On June 2, 1961 at 12:30 p. m., more than two months after the robbery, Detective Sutton arrested petitioner and brought him to the station house. At a line-up consisting of five men including petitioner, none of whom were wearing a hat or coat, Mrs. Bergman quickly and positively identified petitioner as one of the two men who robbed her.[5] Following that identification, the police along with petitioner Savino went to Savino's apartment between 4:30 and 5 p. m. on June 2nd to conduct a warrantless search,[6] which resulted in the discovery and seizure of a hat and coat matching the description Mrs. Bergman had given

1. Petitioner was tried upon Kings County indictment 1968/61. Trial commenced on October 31, 1961 in the former County Court, Kings County before then County Judge Samuel S. Leibowitz. Only the jury was chosen on that day. Testimony was given on November 1, 1961 for a full court day and for about one half hour on November 2, 1961 in the afternoon. Summations of counsel were then completed. The Court charged the jury on the morning of November 3, 1961. The jury left the courtroom to begin deliberations at about 11:30 on that morning and returned with a verdict at 1:10 p. m. The uncertified 368 page transcript has been provided to the Court by the Attorney General for the State of New York.

2. Record, p. 87, People v. Savino & DeBerry, County Court, Kings County (1961).

3. Record, *supra* at 79.

4. Record, *supra* at 57, 67.

5. Record, *supra* at 51–52, 70, 76.

6. Record, *supra* at 52–53.

of the hat and coat worn by one of the robbers.[7]

Mrs. Bergman was thereafter summoned to a police station to view petitioner for a second time in order that she might see him dressed in the hat and coat police had seized from his apartment.[8] She again positively identified Savino as one of the two men who robbed her.

At trial Mrs. Bergman was the sole identifying witness for the prosecution. She testified and was cross-examined at great length as to the distinguishing features of the robber she identified as petitioner, and stated she was a "thousand percent" sure of her identification. Over the objection of petitioner's counsel, the hat and coat seized in the search of petitioner's apartment were admitted into evidence.[9]

Aside from Mrs. Bergman's testimony, only one additional piece of evidence tended to show that Savino and DeBerry were acquainted prior to their arrests. Co-defendant DeBerry offered an alibi defense in which it was alleged that on March 23, 1961, the date of the robbery, he was painting the apartment of an alibi witness.[10] In rebuttal, the prosecution called Detective Sutton who in the course of his testimony stated that DeBerry had told him that one of the two orders of paint which DeBerry claimed at trial were purchased for the alibi witness' apartment, in fact were bought "to paint an apartment of William Savino." [11] Counsel at trial and the trial judge rightly recognized that this testimony was not binding on Savino, and the jury was so instructed.

## Right of Confrontation

Petitioner contends that the trial court erred in permitting Detective Sutton to testify to co-defendant DeBerry's out-of-court statement that some of the paint was bought "in order to paint an apartment of William Savino" because, in addition to controverting DeBerry's alibi defense, its effect was to implicate Savino.

While petitioner has not waived his right to raise as an issue herein deprivation of his right of confrontation, see United States ex rel. Floyd v. Wilkins, 367 F.2d 990, 993 (2d Cir. 1966), we need not rule with respect to it in view of our disposition below as to the effect of the introduction in evidence at trial of the illegally seized hat and overcoat. We note in passing, however, that in light of the apparent absence of crucial, "devastating," or "powerfully incriminating" hearsay, and of the trial court's explicit limiting instructions [12] no fundamental error justifying relief appears present. See Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed. 2d 476 (1968); United States ex rel. Catanzaro v. Mancusi, 404 F.2d 296 (2d Cir., December 2, 1968). See also, United States v. Catino, 403 F.2d 491 (2d Cir. 1968).

While we are convinced of defendant's guilt, that does not relieve us of the obligation to determine whether he received a fair trial in contemplation of law. Our great respect for the New York Court of Appeals which sees no merit to defendant's complaint has compelled us to strain in considering and reconsidering the merits of defendant's next challenge. And so we turn now

---

7. Record, *supra* at 50–54, 57.

8. Record, *supra* at 76. She had identified Savino's co-defendant, DeBerry, at a station house lineup on June 3, 1961 at 12:30 a. m. as the other robber. Record, *supra* at 71.

9. Record, *supra* at 54 and 57.

10. Record, *supra* at 205, 206 and 223. Neither Savino nor DeBerry testified at trial.

11. Record, *supra* at 228.

12. Record, *supra* at 229, 247–48, and 349–50.

to what we view, albeit reluctantly, as the meritorious claim in these proceedings.[13]

### The Search and Seizure Were Unconstitutional

The trial judge, after a *voir dire* examination held to determine the admissibility of the hat and coat seized from petitioner's apartment, found that, although no search warrant was obtained, the search was incident to a lawful arrest; accordingly, the hat and coat were received in evidence.[14]

█ Petitioner's arrest took place on the open highway and at least four hours prior to the warrantless search of his apartment by the police.[15] Without question this search was not incident to a lawful arrest. See Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409 (1925); Stoner v. California, 376 U.S. 483, 487 n. 5, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). In fact the Appellate Division expressly so found. See People v. Savino, 20 A.D.2d 901, 248 N.Y.S.2d 984 (2d Dept. 1964). Further, the State conceded in the New York Court of Appeals and does not suggest otherwise here that petitioner did not consent to the search and seizure and that admitting the hat and coat into evidence was constitutional error.[16]

### Admission of the Hat and Coat into Evidence as Harmless Error in the State Courts

█ Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961), held that the Fourth Amendment requires the exclusion of evidence from trial if it is obtained as a result of a public officer's illegal search and seizure in violation of defendant's rights. The Appellate Division, however, in affirming the judgment of Savino's conviction, held that the admission of the hat and coat into evidence was harmless error because it "did not affect [Savino's] substantial rights." See People v. Savino, 20 A.D.2d 901, 248 N.Y.S.2d 984 (2d Dept. 1964). The affirmance in the Court of Appeals, without opinion, apparently rested upon the same grounds. See People v. Savino, 15 N.Y.2d 778, 257 N.Y.S.2d 345, 205 N.E.2d 536 (1965).

Pursuant to Judge Cannella's dismissal of Savino's prior petition for a writ of habeas corpus [17] "in order to give the New York courts an opportunity to review their previous dispositions in the light of Chapman v. California, *supra*," the New York Court of Appeals permitted reargument. See People v. Savino, 20 N.Y.2d 970 (1967). Emphasizing that the complaining witness had petitioner under observation for forty-five minutes during the robbery, that she identified

---

13. Petitioner has exhausted his New York State remedies with respect to all claims herein.

14. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933, decided on June 19, 1961, held the Fourth Amendment's prohibition against unreasonable searches and seizures equally applicable to the States. Petitioner's trial, which took place in October and November of 1961, was subject to the mandate of *Mapp*. See Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

15. Record, *supra* at 51–52.

16. Respondent's brief on reargument to the New York Court of Appeals, p. 9 (May, 1968):

"We are constrained to agree with appellant that the search was unreasonable and seizure of the hat and coat unlawful inasmuch as it was not incidental to a lawful arrest: (Agnello v. United States, 269 U.S. 20 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409]; Hall v. Warden, [4 Cir.] 313 F.2d 483; United States v. Walker, [5 Cir.] 323 F.2d 11; United States v. DiRe, 332 U.S. 581 [68 S.Ct. 222, 92 L.Ed. 210]; Stoner v. California, 376 U.S. 483 [84 S.Ct. 889, 11 L.Ed.2d 856]; People v. O'Neill, 11 N.Y.2d 148 [227 N.Y.S.2d 416]); nor can it be considered to be a consent search (People v. Loria, 10 N.Y.2d 368 [223 N.Y.S.2d 462, 179 N.E.2d 478])."

17. United States ex rel. Savino v. Follette, 66 Civ. 1274 (S.D.N.Y. July 11, 1967).

petitioner at a line-up at which none of the five men wore a hat or coat, and that she did not testify they were the hat and coat petitioner wore at the time of the crime but were "exactly like" those items, the Court of Appeals found "they played no meaningful role in identification" and held their receipt "harmless beyond any reasonable doubt." See People v. Savino, 22 N.Y.2d 732, 292 N.Y.S.2d 115, 239 N.E.2d 209 (1968).

### Applicability of Harmless Error Doctrine

Petitioner first claims that the harmless error doctrine should have no application to evidence illegally seized in violation of the Fourth Amendment and erroneously admitted into evidence.

In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) the United States Supreme Court established a uniform standard binding upon both state and federal courts for determining whether a constitutional error is harmless. At the same time, however, it noted that certain prior Supreme Court "cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." 386 U.S. at 23, 87 S.Ct. at 827. In particular, the Supreme Court may have left open whether violation of the Fourth Amendment's prohibition against unreasonable search and seizure can ever be harmless error. See Henry v. Mississippi, 379 U.S. 443, 449 n. 6, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Fahy v. Connecticut, 375 U.S. 85, 86, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). See also, Pope v. Swenson, 395 F.2d 321, 324 n. 2 (8th Cir. 1968); United States v. Birrell, 269 F.Supp. 716, 725 n. 13 (S.D.N.Y. 1967), rev'd on other grounds, 400 F.2d 93 (2d Cir. 1968). Cf. Bumper v. North Carolina, 391 U.S. 543, 560–561, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) (Black, J. dissenting). But see, Stoner v. California, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); Bumper v. North Carolina, supra 391 U.S. at 550, 88 S.Ct. 1788; Rosenthall v. Henderson, 389 F.2d 514, 516 (6th Cir. 1968); Gladden v. Frazier, 388 F.2d 777 (9th Cir. 1968); Lockett v. United States, 390 F.2d 168 (9th Cir. 1968); Theriault v. United States, 401 F.2d 79, 84 (8th Cir. 1968); United States v. Ramseur, 378 F.2d 902, 903 (6th Cir. 1967); United States v. Reed, 392 F.2d 865, 867 (7th Cir. 1968).

Petitioner argues that the purpose of the Fourth Amendment exclusionary rule —to deter police officers from conducting illegal searches [18]—is a policy distinct from preventing prejudice to the individual and requires automatic reversal. We need not determine this issue, however, in light of our holding immediately below that under Chapman the error at trial cannot be deemed harmless.

### Erroneous Admission not Harmless Beyond a Reasonable Doubt

Petitioner contends that the State has not sustained its burden of proving that the introduction of the illegally seized hat and coat was harmless error beyond a reasonable doubt. We agree.

In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court declared "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828. This standard requires "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," a rephrasing of the test employed earlier in Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). Thus, "[a]n error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot under Fahy, be conceived of as harmless." 386 U.S. at 23–24, 87 S.Ct. at 828.

18.  Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961).

Whether or not there was sufficient evidence in the case, aside from the hat and coat, for the jury to have found petitioner guilty is not the issue;[19] nor is the issue whether this particular jury was in fact influenced by the hat and coat. See Rosenthall v. Henderson, 389 F.2d 514, 516 (6th Cir. 1968); Reeves v. Warden, Maryland Penitentiary, 346 F.2d 915, 923 (4th Cir. 1965). Rather, the issue is whether there is a reasonable possibility that the hat and coat might have contributed to the verdict. See Chapman v. California, 386 U.S. at 24, 87 S.Ct. 824; Fahy v. Connecticut, 375 U.S. at 86–87, 84 S.Ct. 229; Gladden v. Unsworth, 396 F.2d 373, 377 (9th Cir. 1968).

A thorough examination of the trial record in view of the Chapman standard discloses that the hat and coat supported the State's case in two different respects. On the one hand, the introduction of the hat and coat served to show that Mrs. Bergman's identification was positive when petitioner was wearing a hat and coat, as well as when he was not. It was this aspect the State focused on in arguing that the error was harmless since Mrs. Bergman's first identification of petitioner came when he was wearing neither a hat nor a coat; and that her identification would be none-the-less positive in the absence of the hat and coat.

There is another far more important aspect to this evidence, however, which neither the State nor the New York courts appear to have expressly considered. The admission of these articles seized from petitioner's apartment and matching Mrs. Bergman's description of the clothing worn by one of the robbers, independently tied petitioner to the crime and independently corroborated Mrs. Bergman's identification of petitioner as one of the two robbers. Thus, the jury heard Mrs. Bergman testify to the description she gave the police immediately after the robbery of the black coat and the black hat with the "unusual black and white intertwined" band worn by one of the robbers; they heard Detective Sutton testify to subsequently finding a hat and coat matching that description in Savino's apartment; and they could compare that hat and coat to Mrs. Bergman's description.

This independent link connecting petitioner to the robbery is particularly significant in the light of the nature of the State's evidence. Aside from the hat

19. The Supreme Court has spoken out against too much reliance by a reviewing court on its own view of "overwhelming evidence," particularly where witness credibility is involved.

Thus, in Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), Mr. Justice Black dissented on the ground that even without the illegally seized evidence "the conclusion is inescapable that this defendant committed the crimes for which the jury convicted him." After holding the introduction of the illegally seized evidence not to be harmless error, the majority in a footnote specifically direct themselves to Justice Black's dissent stating:

"It is suggested in dissent that '[e]ven assuming * * * that there was no consent to search and that the rifle * * * should not have been admitted into evidence * * * the conviction should stand.' This suggestion seems to rest on the 'horrible' facts of the case, and the assumption that petitioner was guilty.

*But it is not the function of this Court to determine innocence or guilt, much less to apply our own subjective notions of justice. Our duty is to uphold the Constitution of the United States."* 391 U.S. n. 16 at 550, 88 S.Ct. at 1792 (emphasis supplied).

Only after this conclusion was reached does the majority go on in a separate paragraph of that footnote to state:

"In view of the dicursive factual recital contained in the dissenting opinion, however, an additional word may be in order. There can be no doubt that the crimes were grave and shocking. There *can* be doubt that the petitioner was their perpetrator." 391 U.S. at 550, 88 S.Ct. at 1793.

See also, United States v. Lookretis, 398 F.2d 64, 65–66 (7th Cir. 1968); United States ex rel. Joseph v. LaVallee, 290 F. Supp. 90, 95 (N.D.N.Y.1968). But see, Hooper v. Swenson, 401 F.2d 352, 355–356 (8th Cir. 1968).

and coat, the People's case rested solely upon Mrs. Bergman's identification of petitioner;[20] the jury's impression of the credibility her testimony warranted was critical;[21] therefore, the discovery of a hat and coat identical to the ones described by Mrs. Bergman, in petitioner's apartment subsequent to her identification of petitioner, provided a potentially determinative cross-check of her testimony.

The force of this independently significant and corroborative evidence was effectively brought home to the jury. Near the outset of her testimony, Mrs. Bergman stated:

"I gave the original description the morning of the robbery. I said it was a black hat, and I described its shape, and I particularly remembered it because it had a black and white intertwined band on it; and as I described it, it is exactly as the description I originally gave, and it is exactly what he wore.[22]

\* \* \* \* \* \*

It was the shape of the hat that is different than the average; that it was like velvety in texture; I remember that. It looked very dressy for that hour of the morning; and the hat band was unusual, the black and white intertwined, so that it gave it a sort of tweedy appearance."[23]

At another point, Mrs. Bergman quoted herself as saying to the police after the hat and coat had been seized from petitioner's apartment and during her identification of petitioner while he wore his hat and coat:

"I said, 'Just look at that hat. It is exactly the way I described it to you. Just look at that hat,' and I was amazed at the photograph I had made in my own mind that here was the man wearing the identical hat as I described and just as I remembered it."[24]

Recognizing the devastating character of this evidence, the District Attorney stressed in summation:

"For goodness sake, men, what more could you expect from this woman? She said he had a black hat, Savino, and a black coat, and she never at any time said, 'I am sure this is the coat.' She said, 'It looks exactly like it.' She said the hat looks exactly like it. So, when you stop to think about it, here is the interesting thing: Just think about this when you go into that jury room, and I know you will analyze it.

Did the detectives know when they bagged him, Savino, that he had a black hat and black coat? He didn't have it when they grabbed him. After they took him to the precinct and the woman says, 'That is one of the men,' then they went to his apartment and what do you think they found,—a black hat and a black coat. Is that just a coincidence that they found a black

---

20. Record, *supra* at 292. The District Attorney stated in summation and in answer to defense counsel's arguments in summation:
    "So you gentlemen were asked a question: 'This is the only evidence that the prosecution has?' That is counsel's argument. Well, gentlemen, I am giving you all the evidence I have. I can't manufacture evidence. I am giving you everything I have, and I only have this woman *plus the hat and coat that this Savino had*; that's all. And if you don't think this woman is an accurate witness, well, I am finished; that's all I have to give you. I have given you everything that I have." (emphasis supplied).

21. Record, *supra* at 343. The Court charged the jury:

    "When it comes to the question of identification, you must be very scrupulous in seeing to it that the identification is not—that the witness is not only truthful but that the witness is accurate, and that every reasonable possibility of mistake has been eliminated. You must be ever careful and ever scrupulous in that regard. I can't say that with any greater force than I have. The case either stands or falls on the testimony of Mrs. Bergman so far as the prosecution is concerned. It is for you to say whether the lady has told you the truth and whether she is accurate."

22. Record, *supra* at 57.

23. Record, *supra* at 66.

24. Record, *supra* at 105.

hat and black coat; and she described the band,—a small band." [25]

Viewing the brief trial transcript as a whole, this is not an instance where the illegally seized evidence admitted at trial is merely cumulative of other properly admissible evidence, or of defendant's own testimony, and therefore harmless beyond a reasonable doubt. See Gladden v. Frazier, 388 F.2d 777 (9th Cir. 1968); Lockett v. United States, 390 F.2d 168 (9th Cir. 1968); Application of Reynolds, 397 F.2d 131, 135–136 (3d Cir. 1968); Luna v. Beto, 395 F.2d 35, 39 (5th Cir. 1968); Theriault v. United States, 401 F.2d 79, 84 (8th Cir. 1968). Nor is this an instance where the illegally seized evidence is so insignificant and unimportant that it could not have made any difference in the outcome of the trial. See United States v. Ramseur, 378 F.2d 902, 903 (6th Cir. 1967); United States v. Reed, 392 F.2d 865, 867 (7th Cir. 1968). Rather, the hat and coat in this prosecution played a role akin to that of the illegally seized evidence in Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), and Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), discussed below.

In Stoner v. California, *supra*, eyewitnesses had described one of two robbers as carrying a gun and wearing horned rimmed glasses and a grey jacket. Pursuing a lead, police discovered a pair of horned rimmed glasses, a grey jacket and a gun in the room of a man the two eyewitnesses had identified from a photograph as the robber who carried the gun. This evidence, seized illegally without a warrant, was introduced at the trial against Stoner, along with the testimony of eyewitnesses and his own confession to the crime charged. [26]

The majority reversed the judgment of conviction. In footnote 8 of their opinion, the eight majority Justices state as to harmless error:

"The respondent has argued that the case should be remanded to let the California District Court of Appeal decide whether the admission of this evidence was harmless error. But the conviction depended in large part upon the jury's resolution of the question of the credibility of witnesses, and that determination must almost certainly have been influenced by the incriminating nature of the physical evidence illegally seized and erroneously admitted. There is thus at least 'a reasonable possibility that the evidence complained of might have contributed to the conviction.' Fahy v. Connecticut, 375 U.S. 85, 86, 84 S.Ct. 229, 230, 11 L.Ed.2d 171." 376 U.S. n. 8 at 490, 84 S.Ct. at 893.

Mr. Justice Harlan's concurring opinion in Bumper v. North Carolina, *supra* is even more instructive here:

"[T]he question cannot be whether, in the view of this Court, the defendant actually committed the crimes charged, so that the error was 'harmless' in the sense that petitioner got what he deserved. The question is

25. Record, *supra* at 289. The record was replete with significant references to the hat and coat. See pp. 44, 54–57, 65–68, 79–81, 84, 105–107, 151–152, 154, 182–183. In summarizing the evidence during the course of his charge the trial judge stated, "She described the clothing that he wore. She said that when the detective brought the hat and coat, they looked exactly like the clothing that he wore on the day of the alleged robbery." Record, *supra* at 341.

The prosecutor summed up the significance this hat and coat may have had on the jury when at the time of sentencing he stated:

"I am a hundred percent sure of her accuracy, and I have no feeling whatever that there is the slightest bit of error in her identification, *particularly when she described the hat so minutely, the description of it, and that hat was found in this defendant's closet, and also the coat was found in this defendant's closet.*" Record, *supra* at 378. (emphasis supplied).

26. The United States Supreme Court refused to review the voluntariness of this confession. See 376 U.S. at 491, 84 S.Ct. 889 (footnote of Harlan, J. concurring in part and dissenting in part).

whether the error was such that it cannot be said that petitioner's guilt was adjudicated on the basis of constitutionally admissible evidence * *.

I do not think this can be said here. The critical question was the identity of the perpetrator of these crimes. The State introduced eyewitness identification of petitioner by his two victims, and a gun with which there was evidence these victims were shot, together with testimony that it had been found in petitioner's place of abode. The jury could, of course, have found the testimony of the victims credible beyond a reasonable doubt, and convicted petitioner on this basis alone. But it might well not have. The addition of a tangible cross-check linking petitioner with the crime can hardly be said, from the judicial vantage point, to have been harmless surplusage."

### Conclusion

█ We find the State has failed to meet its burden of establishing beyond a reasonable doubt that the erroneously admitted evidence did not contribute to the verdict obtained. Moreover, even if we treat the determination of the harmless error issue as one of fact, upon a thorough examination of the trial record we are unable to find fair support for the holding of the New York Court of Appeals that the erroneous "receipt [of the hat and overcoat into evidence] was harmless" beyond a reasonable doubt. See 28 U.S.C. § 2254(d) (8). Accordingly, despite the existence of evidence properly in the record which the jury was entitled to credit fully and which, if so credited, would have been clearly sufficient to establish Savino's guilt beyond a reasonable doubt, we are constrained to recognize that petitioner is entitled to a new trial free from infectious constitutional error.

For the reason set forth above, petitioner's application for a writ of habeas corpus is granted. The respondent shall unconditionally release the petitioner from confinement unless within thirty days from the date hereof the People of the State of New York proceed to retry him. If respondent chooses to appeal from this decision, for which purpose a certificate of probable cause is hereby granted, this order shall be stayed upon the filing of a notice of appeal, pending the mandate of the Court of Appeals for the Second Circuit.